COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Coleman and Willis

CECIL V. BROWN
AND
STATE FARM GENERAL INSURANCE COMPANY          MEMORANDUM OPINION[*]
                                                    PER CURIAM
v.   Record No. 1595-96-2                      DECEMBER 10, 1996

JAMES RANDOLPH JENKINS

            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                 (Lynne Jones Blain; Michelle P. Wiltshire;
                 Morris & Morris, on brief), for appellants.

                 (Jeffrey C. Early; Berry & Early, on brief),
                 for appellee.


        Cecil V. Brown and its insurer (hereinafter collectively

referred to as "employer") contend that the Workers' Compensation

Commission erred in (1) finding that employer failed to prove

that James R. Jenkins unjustifiably refused to cooperate with

vocational rehabilitation; and (2) not considering whether

Jenkins' misrepresentation of his physical capabilities to his

treating physician and the vocational rehabilitation counselors

established an unjustified refusal to cooperate with vocational

rehabilitation.  Upon reviewing the record and the briefs of the

parties, we conclude that this appeal is without merit.

Accordingly, we summarily affirm the commission's decision.  Rule

5A:27.

_____

        [*]Pursuant to Code § 17-116.010, this opinion is not
designated for publication.

On appeal, we view the evidence in the light most favorable to the prevailing party below. See R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). So viewed, the evidence established that Jenkins sustained a compensable injury to his left hand on May 15, 1992, while working as a carpenter for employer. Dr. E. William Pelton, a neurologist, diagnosed Jenkins as suffering from reflex sympathetic dystrophy due to nerve damage caused by the trauma of the injury. Dr. Pelton restricted Jenkins from any work involving his left hand. Dr. Pelton opined that Jenkins could work an eight-hour day unless pain interfered with his sleep. Dr. Pelton's notes revealed that Jenkins' pain disturbed his sleep.

On April 4, 1995, when vocational counselors Irene Creger and David Trivillino first met with Jenkins, Jenkins informed them that his physical therapy schedule for a shoulder condition would limit his availability to meet with them. A week later, Jenkins met Trivillino at the Virginia Employment Commission ("VEC") and registered with the VEC. Jenkins did not visit any prospective employers on that day because he did not feel well and his right arm was in a sling. Jenkins also met with Trivillino and a Veteran's Administration representative on April 18, 1995 and April 25, 1995. On those dates, Jenkins completed job applications.

Jenkins missed an appointment with Trivillino on April 21, 1995. Jenkins would not give Trivillino a copy of his driving record.

On April 28, 1995, Michael Cheney, who replaced Trivillino, met with Jenkins. Jenkins completed an application for a full-time job with a greenhouse, which involved placing seedlings in pots on a conveyor belt. Jenkins indicated on the application that he could only work four hours per day.

Jenkins went with Cheney to a Wal-Mart store on May 2, 1995, and applied for a "greeter" position. The job required him to greet customers who entered the store for five hours per day. Jenkins stated that he could only perform this job four hours per day because the job required that he stand on a hard floor.

Cheney called Jenkins on May 4, 1995, to confirm a meeting for the next day. When Jenkins informed Cheney that he had only a limited amount of time to meet the next day due to his physical therapy schedule, Cheney handed the telephone to Creger, who then hung up on Jenkins after a short conversation. Neither Cheney nor Creger contacted Jenkins again.

After viewing a surveillance videotape depicting Jenkins' activities, Dr. Pelton testified by deposition that Jenkins could have performed the greeter job for five hours per day. Dr. Pelton also stated that, based on the videotape, it appeared that Jenkins could use his left hand for limited periods. Dr. Pelton testified, however, that he could not determine from the

3

videotape whether the activities caused pain or swelling.

Employer filed an application seeking to suspend Jenkins' benefits based upon his unjustified refusal to cooperate with vocational rehabilitation.  Based upon Jenkins' age (65), the distance he lived from the primary job market, and the totality of the evidence, the commission concluded that Jenkins did not unjustifiably refuse to cooperate with employer's vocational rehabilitation efforts.

## II.

Unless we can say as a matter of law that employer's evidence sustained its burden of proof, the commission's findings are binding and conclusive upon us.  See Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970). The employer's application to terminate benefits largely required the commission to make factual determinations.  According to well-established principles, "[m]atters of weight and preponderance of the evidence, and the resolution of conflicting inferences fairly deducible from the evidence, are within the prerogative of the commission, and are conclusive and binding on the Court of Appeals." Kim v. Sportswear, 10 Va. App. 460, 465, 393 S.E.2d 418, 421 (1990) (citations omitted).

The evidence proved that only a relatively short period of time elapsed while employer attempted vocational rehabilitation.  The commission recognized that Jenkins expressed reservations about the jobs, but found that his age, disconcerting physical

4

therapy, travel distance, and other factors limited the time available to conduct job searches. Furthermore, the evidence proved that Creger's unilateral decision to cease contact with Jenkins was not reasonable. In view of these circumstances and the evidence of Jenkins' efforts to comply with the requests of the vocational counselors, we cannot say as a matter of law that employer's evidence sustained its burden of proof.

### III.

Employer contends that the commission did not address its argument that Jenkins' misrepresentation of his physical capacity to the vocational rehabilitation counselors and to Dr. Pelton constituted an unjustified refusal to cooperate with vocational rehabilitation. We disagree. The commission considered whether the greenhouse and greeter jobs fell within Jenkins' capabilities. The commission considered the surveillance videotape depicting Jenkins' activities and its effect, if any, upon Dr. Pelton's opinion regarding Jenkins' physical capacity. Indeed, the record reveals that Jenkins' physical capacity was a disputed factual issue. Based upon this record, the commission, in its role as fact finder, was entitled to weigh this evidence and Dr. Pelton's opinions, and to conclude that Jenkins did not misrepresent his physical capacity or otherwise unjustifiably refuse to cooperate with vocational rehabilitation. For these reasons, we affirm the commission's decision.

<u>Affirmed.</u>