## Richmond

Myra Beatrice Lucas, Et Al., Etc. v. Charles E. Lucas, Et Al.

January 17, 1972.

Record No. 7673.

Present, All the Justices.

*Willard I. Walker (John M. Oakey, Jr.; Charles B. Andrews; McGuire, Woods & Battle; Dillow and Andrews, on brief), for appellants.*

*Edwin C. Stone; James C. Turk (Dalton, Turk & Stone, on brief), for appellees.*

I'Anson, J., delivered the opinion of the court.

The Industrial Commission, with one commissioner dissenting, reversed the award of its deputy commissioner and denied compensation benefits sought by the dependents of Billy Lucas, deceased. The Commission's majority held that the employee, Billy Lucas, was performing a volunteer service for his employer at the time of his

death and that this service was not "causally related to the employee-employer relationship." We granted a writ of error to the judgment.

The sole question presented on this appeal is whether the facts, as determined by the Commission, show as a matter of law that Billy Lucas' death did arise out of and in the course of his employment.

The evidence, without conflict, shows that Billy Lucas, the deceased, was employed by Charles Lucas to assist Charles in his cement finishing business. On the morning of October 10, 1967, Billy told Charles that he had a personal errand that needed attention and asked permission of Charles to borrow his truck and leave work at an earlier hour. Charles consented, and Billy left the Pearisburg, Virginia, job site at approximately 11:30 o'clock that morning.

Before his departure, Charles had mentioned to Billy that he had to go to the Paris Building Mart in Pulaski to pick up the wage checks of three of his employees who, though working for him that day, were also employees of the Building Mart. Since Charles and a number of his employees were periodically employed by the Building Mart, it was customary for either Charles or one of his employees to go to the Building Mart on pay day to pick up their wage checks and deliver them to the men on Charles' job sites. On this occasion it was necessary that Charles make the trip because the three of his employees expecting Building Mart checks were on another of his job sites some distance away in Christiansburg, and Charles did not want them "losing any time" by going to Pulaski to get their own checks.

At approximately 2:00 p.m. Billy returned to the Pearisburg job site and learned that Charles had not completed the work in which he was then engaged. Charles again mentioned to Billy that he had to go to Pulaski and pick up the checks for his employees. Billy was not qualified to finish Charles' work, so he volunteered to make the trip. Charles approved the suggestion and Billy, driving Charles' truck, went home, picked up his wife and nephew, and started on the trip to Pulaski. While enroute an accident occurred, fatally injuring Billy.

We have repeatedly held that the language of the statute (Code § 65.1-7)[1] "arising out of and in the course of the employment" is to be read conjunctively and not synonymously, that both conditions must be met before compensation can be awarded; and that the words are to be liberally construed to carry out the humane and

---

1. Formerly Code § 65-7.

beneficent purpose of the Workmen's Compensation Act. *Brown v. Reed*, 209 Va. 562, 564, 165 S.E.2d 394, 396 (1969); *Conner v. Bragg*, 203 Va. 204, 207-08, 123 S.E.2d 393, 396 (1962).

We have many times quoted with approval the definition of "arising out of" found in *In Re McNicol*, 215 Mass. 497, 102 N.E. 697, L.R.A. 1916A, 306 (1913), which states that an injury "arises 'out of' the employment, when there is apparent to the rational mind upon consideration of all the circumstances, a causal connection between the conditions under which the work is required to be performed and the resulting injury."

An injury "occurs in the 'course of employment' when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while he is fulfilling the duties of his employment or is doing something which is reasonably incidental thereto." *Conner v. Bragg, supra.*

In Virginia we have adopted the "actual risk test," which requires only that the employment expose the workman to the particular danger from which he was injured, notwithstanding the exposure of the public generally to like risks. *Immer and Co., et al. v. Brosnahan*, 207 Va. 720, 725, 152 S.E.2d 254, 257 (1967). Hence, if Billy's employment status placed him on the highway and an accident occurred, such accidental injury arose out of and in the course of his employment.

[2] In *Honaker v. Hartley*, 140 Va. 1, 13-14, 124 S.E. 220, 223 (1924), we held that compensation under the Act was not confined to injuries occurring only during working hours. In that case a woodsman was injured when he fell outside the bunkhouse door of his employer's lumber camp. We said that the employment relationship "caused the employee to be at the place he was at the time of the accident and thus exposed him * * * to the hazard or risk of the happening of the accident; * * * the circumstances that the accident and injury occurred outside of regular working hours is wholly immaterial." Thus, even though Billy Lucas' employment for the day had ended at 11:30 a.m., that in itself is no bar to compensation for his death so long as an employment relationship existed during the trip that exposed decedent to his fatal injury.

The phrase "arising out of and in the course of the employment" covers those accidents which cause injury to an employee while he is discharging some duty he is authorized to perform in furtherance of his employer's business, either directly or indirectly. *Cohen* v.

*Cohen's Department Store*, 171 Va. 106, 110, 198 S.E. 476, 477 (1938).

 In Sneider, on Workmen's Compensation, Vol. 7, § 1662(a), page 264, it is said:

> "If the voluntary act of an employee which causes an injury is sufficiently related to what the employee is required to do in fulfilling his contract of service, or is one in which someone in a like capacity may or must do in the interest of his employer's business, the fact that the employee was not actually required to perform the act will not impair his right to recover compensation."

To bar an employee from the protection of Workmen's Compensation benefits because he voluntarily acted in his employer's interest would be to discourage constructive initiative, which is not a desirable result.

Billy was not required to make the trip to Pulaski, but it was obviously for the benefit of Charles' business and authorized by him. Billy was not qualified to finish the work in which Charles was then engaged but he could serve the business interest of Charles by making the trip in his stead. Had Billy not volunteered that service, Charles would have had to abandon his incompleted work in Pearisburg and make the trip himself, or release one of his employees from the job site at Christiansburg so he could travel to Pulaski and pick up the checks. Both alternatives were undesirable from Charles' standpoint. When Billy was fatally injured he was at a place he was reasonably expected to be while engaged in an activity incidental to his employment by Charles. He was not on a mission of his own wholly unconnected with his employment. Under these circumstances, Billy's mission arose out of and in the course of his employment and did not remove him from the protective umbrella of the Workmen's Compensation Act.

The order of the Industrial Commission is reversed and the case is remanded with directions to allow a proper award, together with attorney's fees incurred in this litigation.

*Reversed and remanded.*