**Alexandria**

KUM JA KIM, ADMINISTRATRIX, etc.

v.

SPORTSWEAR, et al.

No. 0094-89-4

Decided June 12, 1990

462

COUNSEL

William F. Wall, for appellant.

Joseph N. Bowman (Patrick J. Kearney; Bradshaw Rost; Sheila C. Coan; Thomas, Hirsh & Albert, P.C., on briefs), for appellee.

OPINION

**COLEMAN, J.**—We consider for the first time whether an injury sustained while attending an employer sponsored social or recreational event arises out of and in the course of employment. Code § 65.1-7.

Soon Deuk Lee was fatally injured on December 28, 1988, while attending a company sponsored Korean New Year's party,[1] when a fellow employee accidentally struck her with his automobile as she exited the door of the garment factory where she worked. Kum Ja Kim, her first cousin and closest relative in the United States, filed a claim with the Industrial Commission on behalf of the decedent's parents, Joe Hee Lee and Won Ja Lee, who reside in Korea, on the basis that they were destitute, Code § 65.1-66(4), or financially dependent upon their daughter, Code § 65.1-67. The commission denied the claim on the grounds that Lee's death did not arise out of and during the course of her employment and that the claimant failed to prove that Lee's parents were destitute or financially dependent upon her. We hold that the commission misapplied the law in ruling that Lee's injury did not arise out of and occur during the course of her employment. Also, contrary to the commission's finding, the record does contain sufficient evidence to establish that Lee's parents were destitute and dependent upon her for support. We reverse the decision of the commission and direct that an award be entered in accord with this opinion. However, because the record fails to reflect whether the award should enter against other employers, in addition to Vienna Enterprises, Inc., we remand the case for entry of the award and for the commission to reconsider who were Lee's employer or employers.

Soon Deuk Lee and approximately twenty other Korean immigrants were employed as seamstresses by both Vienna Enterprises, Inc. and its apparent affiliate, Sportswear. Vienna Enterprises and Sportswear were operated by Walter I. Park. Whether Vienna Enterprises was a sole proprietorship owned by Park or whether it was incorporated with Park being the sole or major stockholder is unclear from the record; it also is unclear whether Vienna Enterprises and Sportswear are the same firm using different names. Regardless of the legal relationship between the businesses and Park, he, with the assistance of Myung Sung Kim, the plant manager, oversaw the daily operations of the garment factory. The employees considered Park to be the owner of the factory.

The New Year's Eve party was a traditional annual function at the factory. On December 28, 1985, Mr. Park coordinated the

---

[1] The Korean New Year falls on December 28.

work schedule of the employees to facilitate their attendance at the year-end party, which was being sponsored and hosted by the company. At Mr. Park's direction, employees were allowed, beginning at mid-afternoon, to leave work early to make preparation to attend the party that evening. The employees' family members and their close associates were welcome to attend the party. Park did not tell the employees that attendance was mandatory, but several employees testified that Mr. Park strongly encouraged all employees to attend, which fact Park did not deny. Mr. Park testified to the Korean custom of young and old in the family joining together in support of the employer as part of the Korean work ethic. He acknowledged that, although attendance was not mandatory, the dedication of the employees assured that attendance would be extremely high. Attendance at the event was virtually unanimous; Park surmised that a few of the older employees may not have been present.

 The deputy commissioner found that Lee's attendance at the party was mandatory as an employee, and therefore her injury occurred during the course of her employment. "An accident occurs 'in the course of employment' when it takes place within the period of employment, at a place where the employee may reasonably be, and while he is reasonably fulfilling duties of his employment or engaged in doing something incidental thereto." *Bradshaw v. Aronovitch*, 170 Va. 329, 335, 196 S.E. 684, 686 (1938). Clearly, an employer can enlarge the "course of employment" by extending the scope of employment to embrace recreational and social events. 1A A. Larson, *Workmen's Compensation Law* § 22.20 (1985). When a worker is injured at a place where his employment requires him to be while engaged in an activity reasonably connected with or incidental to his or her employment, compensation is allowable, *Cohen v. Cohen's Dep't Store, Inc.*, 171 Va. 106, 110, 198 S.E. 476, 477 (1938), even if the injury occurs after the employee's actual employment labors are completed. *Id.*; *Lucas v. Lucas*, 212 Va. 561, 563-64, 186 S.E.2d 63, 65 (1972) (the employment relationship must expose the employee to the risk from which injury occurs, even though the accident results from activity not required by an employee's job or during regular working hours). The deputy commissioner determined that, because the employees felt compelled to attend, the employer had brought attendance at the party within the course of employment. *See Jackson v. American Ins. Co.*, 404 So. 2d 218, 220 (La.

1981) (suggestion to attend can take on an air of compulsion in light of social norms, e.g., deference to age and seniority, which influence the employment relationship). "[C]ompulsion need not take the form of a direct order, if employee is made to understand that he is to take part in the affair." 1A A. Larson, *supra*, at § 22.22.

The full commission, on review, determined that attendance by the employees was not mandatory. The commission ruled that because attendance was not required, the employees were at liberty to attend, and therefore, the accident did not occur during the course of employment. The commission reasoned that, because attendance was not mandatory, the event was not so closely related to the employment that it could be considered within the course of employment.

Matters of weight and preponderance of the evidence, and the resolution of conflicting inferences fairly deducible from the evidence, are within the prerogative of the commission, *Board of Supervisors v. Taylor*, 1 Va. App. 425, 431, 339 S.E.2d 565, 568 (1986), and are conclusive and binding on the Court of Appeals. Code § 65.1-98. "If there is evidence. . . to support the Commission's findings, they will not be disturbed by this Court on appeal, even though there is evidence in the record to support contrary finding[s] of fact." *Boyd's Roofing Co. v. Lewis*, 1 Va. App. 93, 95, 335 S.E.2d 281, 283 (1985). However, when the facts and inferences have been considered in the light most favorable to the prevailing party, whether those facts are sufficient to establish that an injury occurred during the course of employment is a question of law. *Cheatham v. Gregory*, 227 Va. 1, 4, 313 S.E.2d 368, 370 (1984); *Payne v. Master Roofing & Siding, Inc.*, 1 Va. App. 413, 414, 339 S.E.2d 559, 560 (1986).

The extent to which the employer expects or requires the employees to attend a social function is but one of several factors that the commission must consider in deciding whether an event is so closely related to the employment to come within the course of employment. The dispositive question is whether the social or recreational function is so closely associated with the employment to be considered an incident of it. Among the other factors which bear upon that determination, which the commission failed to consider, are the degree to which the employer derives a benefit from the activity, the degree of sponsorship and participation by the

employer, whether the activity occurs on premises associated with the employment, when the activity occurs in relation to work, and the frequency or period over which the activity has been conducted. While attendance at the New Year's Eve party may not have been required of the employees, as the commission determined, that finding standing alone does not control. Had attendance been required, this factor alone may have been sufficient to bring the decedent's injury within the course of employment. *See Aronovitch*, 170 Va. at 335, 196 S.E. at 686. Although attendance was not mandatory, the degree of expectation from the employer that all employees would attend was so high, when considered in relation to the cultural and ethnic pressures that existed, the close correlation between the social event and the employment are apparent. Although attendance may not have been mandatory, it was expected of all employees. The situation was not one where the employer was sponsoring a social event and attendance was optional or not expected. Where employees are strongly urged to attend, factors other than mandatory attendance must be considered in determining whether under the circumstances the event was within the course of employment. 1A A. Larson, *supra* at § 22.23. Here, attendance was highly encouraged. Thus, it was error for the commission, based solely on a lack of compulsion, not to consider other circumstances which bear upon the relationship between the employment and the social event. The purpose, sponsorship, and organization of the event are among additional factors which reflect whether it is so closely connected to the employment to be considered an incident thereof.

Mr. Park directed the preparations for the party, which had been held at year's end in some previous years, including the prior year. The costs of the party were underwritten entirely by the employer. The employer purchased gifts for distribution to the employees. The party was held on the work premises at the end of the workday, beginning at approximately 6:30 p.m.

Mr. Park coordinated the schedule of events leading up to and at the party. He acknowledged that one purpose of the party was to foster unity among the work force. At the party, Mr. Park addressed the employees, acknowledging his appreciation for a gift which he received from them. He could not recall to what extent he made congratulatory or encouraging comments to the employees relating to their work, but did not deny making such state-

ments. An employee testified that it appeared that Park distributed the gifts on the basis of merit, the harder working employees receiving the more expensive gifts, but Park denied that suggestion.

The plant manager testified that the portion of the party consisting of Park's remarks and his distributing the gifts lasted from about 6:30 until approximately 9:30 p.m. Following the planned program, the employees socialized among themselves. About one-half of the employees were still in attendance when the accident occurred, at approximately 10:45 p.m. When Soon Deuk Lee exited the door of the garment factory into the parking lot, a fellow employee accidentally depressed the accelerator of his car instead of the brake while backing out of a parking space. The vehicle struck Lee and hurled her against the building. She died two days later of the injuries which she sustained.

The employer does not contest that, if the accident occurred while Lee was attending a party which was in the course of her employment, the fact that it occurred while she was going to the parking lot on the premises would not constitute grounds to deny compensation. *Brown v. Reed*, 209 Va. 562, 567, 165 S.E.2d 394, 398 (1969) (citing cases in support of the holding "that injuries sustained in automobile mishaps in company parking lots arise out of employment"); *Lucas*, 212 Va. at 563, 186 S.E.2d at 65 (injury "arises out of" where the employment in fact exposes worker to the particular danger).

The injury occurred on the employer's premises, while the decedent was coming from an event which she was reasonably expected to attend. *Cf. Norfolk & Washington Steamboat Co. v. Holladay*, 174 Va. 152, 159-60, 5 S.E.2d 486, 489 (1939). The employer sponsored and funded the function, *Martin v. Mars Mfg. Co.*, 58 N.C. App. 577, 579, 293 S.E.2d 816, 818 (1982), and the employer supervised the conduct of the event. *Moore's Case*, 330 Mass. 1, ___, 110 N.E.2d 764, 767 (1953). Importantly, the employer utilized the event to his benefit, by making remarks to the employees and distributing gifts to them, which were to obtain the good will of the employees. *Martin*, 58 N.C. App. at 579, 293 S.E.2d at 818; *Feaster v. S. K. Kelso & Sons*, 22 Pa. Commw. 20, ___, 347 A.2d 521, 523 (1975). Where the employer sponsors a social or recreational event "for the purpose of maintaining or improving relations with and among employees,

the employees gratify the employer's wish by attending and thus serve the employer's business aim." *Ricciardi v. Damar Products Co.*, 45 N.J. 54, ____, 211 A.2d 347, 349 (1965). While each factor is relevant, no one is essential to a determination that the event was or was not within the course of employment. *Feaster*, 22 Pa. Commw. at ____, 347 A.2d at 523. The dispositive question is whether the event is sufficiently work related, under the particular circumstances of the case, to bring an injury sustained by an employee while attending within the ambit of Code § 65.1-7. *See Ricciardi*, 45 N.J. at ____, 211 A.2d at 349. The commission, which made its decision solely on the basis whether attendance was mandatory, erroneously failed to consider all of the factors material to this determination. We hold, on the facts of this case, that the employer sponsored party was so closely connected and associated with the employment in purpose, time, location, and function that the injury sustained by Soon Deuk Lee arose out of and in the course of her employment. Code § 65.1-7.

Regarding the question whether Lee's parents were destitute or financially dependent upon her, the employer contends that the deputy commissioner abused his discretion in accepting counsel's proffer, in lieu of testimony or other admissible evidence, concerning the parents' situation since the record contains no basis to authenticate or document it. With the exception of Mr. Park, who spoke very little English, none of the witnesses spoke English, so the deputy commissioner and attorneys had to communicate with them through a translator. On several occasions, the deputy commissioner had disagreements with the translators as to the meaning of the witnesses' testimony and had to conduct separate questioning to seek clarification. In part due to this difficulty, the deputy commissioner, pursuant to Rule 1(A) of the Industrial Commission, allowed counsel to proffer the testimony of the witness, Kum Ja Kim, who was familiar with the parents' living conditions and Soon Deuk Lee's financial assistance to them. The record indicates that the proffer was the summation of a questionnaire which had been completed by the parents and Ms. Kim. The questionnaire, however, was not part of the record. The deputy commissioner accepted the proffer over appellee's counsel's objection and ruled that counsel could attack the basis for the proffer on cross-examination.

The proffer was that at the time of Lee's death, her mother was a 53-year-old, uneducated farmer's wife who, following surgery in 1981, had been unable to work in the fields. Apparently, the mother owned no property and had no assets or income of her own. Decedent's father, according to the proffer, was a 56-year-old farmer who leased his land. He needed the equivalent of $705 per month to pay his lease and to feed and clothe his family of six children, five of whom were still at home and dependent upon him. His annual income from the farm was the equivalent of $2,208, leaving him short $500 or $600 to meet his necessities. He owned no property and had no assets, insofar as the proffer reflects. According to the proffer, Lee sent her parents $500 each month for the six months before her death and on two occasions had sent lump sums of $1,000 or $1,500. Kim had lived with Lee's parents in Korea as recently as October, 1984 and could confirm their financial condition. Soon Deuk Lee's roommate could confirm that she monthly sent money to her parents, which was also confirmed by the records of her savings account.

Based upon this proffer, the deputy commissioner found the decedent's parents were destitute and, therefore, conclusively presumed wholly dependent within Code § 65.1-66(4) because of their meager earnings, lack of assets, poor health, age, lack of formal education, and number of dependants. *See Bagwell v. Doyle*, 187 Va. 844, 48 S.E.2d 229 (1948). The proffer and the evidence in the record show that the mother was destitute and that the father was dependent on his daughter to supplement his monthy income of $184 with an additional $500 or $600.

> While proof of absolute dependency for life's necessities is not required, it must be shown that the claimant looked to and relied on the contributions of the employee, "in whole or in part, as a means of support and maintenance in accordance with his or her social position and accustomed mode of life."

*Miller & Long Co. v. Frye*, 215 Va. 591, 594, 212 S.E.2d 258, 260 (1975) (citation omitted).

The full commission ruled that the evidence was "insufficient" to support a finding of destitution or dependency, there having been no "stipulation," and no evidence to support the "proffer." Witnesses were present who had personal knowledge and had

made personal observations upon which the proffer was based. Those witnesses were available for cross-examination. The deputy commissioner, pursuant to Rule 1, and because of the translation problems, sought to ascertain the facts through a proffer of the evidence from counsel, subject to opposing counsel's being able to challenge the proffer on cross-examination. Appellee's counsel did not on cross-examination raise any question that the facts contained in the proffer were not correct.

■ As a general matter, while procedures before the Industrial Commission must ensure that the parties are accorded due process of law, the Industrial Commission is afforded considerable latitude in adapting the conduct of hearings to the circumstances of the case. Rule 1(A), Rules of the Industrial Commission; *see Sergio's Pizza v. Soncini*, 1 Va. App. 370, 376, 339 S.E.2d 204, 207 (1986). Given the difficulties encountered in the conduct of the hearing, the deputy commissioner did not abuse his discretion by requesting a proffer of the evidence concerning the parents' circumstances, subject to cross-examination. Thus, we hold that the deputy did not err under these circumstances, where the questionnaire and witnesses were available, in receiving and accepting the proffer of evidence.

Where there is no conflict in the evidence, the question of its sufficiency becomes one of law. *Payne*, 1 Va. App. at 414, 339 S.E.2d at 560. We hold that the evidence contained in the proffer shows that the mother was destitute and that the father was dependent upon Soon Deuk Lee for between $500 and .$600 monthly support. Therefore, we reverse the commission and reinstate the deputy commissioner's award granting compensation to the decedent's parents.

The deputy commissioner entered the award against Walter I. Park, trading as Sportswear and against Vienna Enterprises, Inc., jointly and severally, and imposed a fine against them for allowing the workmen's compensation insurance to lapse. Code § 65.1-106. Counsel for the Uninsured Employer's Fund defended the claim and Mr. Park appeared uncounseled as a witness. The record is undeveloped as to the relationship between Park and Vienna Enterprises, Inc., and Sportswear. The hearing was limited to the compensability of the injury. Mr. Park was asked whether the two business entities were in fact the same, and whether he was the owner, but the evidence was not developed as to whether

he was an employer as an individual proprietor. He has challenged on appeal the award against him personally. Because the record is not adequate on that question, we remand the issue for the limited purpose of determining who employed Lee and against whom the award and fine should be lodged.

Lastly, the claimant asserts that administration of the Uninsured Employer's Fund by the Industrial Commission creates an unacceptable appearance of impropriety, in that the Industrial Commission sits in review of awards against itself. The Workers' Compensation system is a creature of the legislature, and as such it is a matter of legislative prerogative as to the organization and authority of the Industrial Commission. The General Assembly, in creating the Fund, placed its management and administration within the purview of the Industrial Commission. Code § 65.1-146. Although the Fund is administered by the Industrial Commission, claims against it are defended by attorneys from the office of the Attorney General of Virginia. Code § 65.1-148. Having chosen to structure the Fund's administration and defense in that manner, in the absence of a specific claim and showing that the system denies or infringes the constitutional rights of employers or employees, the propriety of the Fund's administration is not adequately before us. We will not, however, strike down the statutory scheme as facially invalid.

For the foregoing reasons, the claimant's denial of award is reversed, and the case is remanded for further proceedings in accordance with this opinion.

*Reversed and remanded.*

Duff, J., and Moon, J., concurred.