COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Elder and Senior Judge Cole
Argued at Richmond, Virginia


BRYANT HEATING & COOLING AND
 SHELBY INSURANCE COMPANY
                                      MEMORANDUM OPINION[*] BY
v.   Record No. 0752-96-2              JUDGE MARVIN F. COLE
                                        DECEMBER 10, 1996
JOHN CHRISTOPHER POWERS


            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                Steven H. Theisen (Midkiff & Hiner, P.C., on
                brief), for appellants.

                William E. Glover (Glover & Dahnk, on brief),
                for appellee.


        Bryant Heating & Cooling and Shelby Insurance Company

(hereinafter collectively referred to as "employer") appeal a

decision of the Workers' Compensation Commission (commission)

awarding compensation benefits to John Christopher Powers

(claimant).  Employer contends that the commission erred in

finding that (1) claimant sustained an injury by accident arising

out of and in the course of his employment on July 6, 1994; and

(2) claimant's herniated disc was causally related to the July 6,

1994 injury by accident.  Finding no error, we affirm.

                              I.

        On July 6, 1994, claimant was working for employer as a

sheet metal mechanic.  On that day, claimant and his co-workers

---

        [*]Pursuant to Code § 17-116.010 this opinion is not
designated for publication.

travelled from the jobsite to a local convenience store for their lunch break. While travelling to the convenience store, claimant and his co-workers noticed a severe vibration and loud clunking noise coming from employer's truck. One of them crawled underneath the truck and found the "drive shaft was ready to fall out." Consequently, they took the truck to Blakely Automotive Center ("Blakely's") for repairs. Blakely's, a service center which regularly repaired employer's vehicles, was located five to seven miles from the jobsite where claimant and his co-workers had been working.

While waiting for Blakely's to complete the repair work, claimant sat in an office-type swivel chair located on Blakely's premises. The chair had wheels on the bottom. When claimant sat in the chair, it "flung back," and he "felt a sharp pain in [his] back." Claimant stated that the chair "went back further and quicker, easier than what a normal chair would." Claimant further explained that when he tried to sit back in the chair, the spring was evidently loose, causing him to feel as if he was falling backwards to the floor. When he tried to catch himself, he "felt something pop in [his] back." He also felt pain going down his buttock and left leg. Claimant reported the incident to his supervisors on July 6, 1994.

Based upon this record, the commission found that claimant's injury arose out of his employment because the chair's spring mechanism was not properly operating, which constituted an

additional risk peculiar to claimant's employment.  In addition, the commission found that the lack of any objection by Steve Bryant, owner of Bryant Heating & Cooling, to the truck repair established that employer approved of the procedure used by the employees, which benefitted employer and was incidental to claimant's employment.  Therefore, the commission ruled that claimant's injury occurred in the course of his employment.

On appeal, we view the evidence in the light most favorable to the prevailing party below.  R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990).  A finding by the commission that an injury did or did not arise out of and in the course of employment is a mixed finding of law and fact and is properly reviewable on appeal.  City of Richmond v. Braxton, 230 Va. 161, 163-64, 335 S.E.2d 259, 261 (1985).

"The concepts of 'arising out of' and 'in the course of' employment are not synonymous and both conditions must be proved before compensation will be awarded."  Marketing Profiles, Inc. v. Hill, 17 Va. App. 431, 433, 437 S.E.2d 727, 729 (1993) (en banc).  "The phrase arising 'out of' refers to the origin or cause of the injury."  Chesterfield v. Johnson, 237 Va. 180, 183, 376 S.E.2d 73, 74 (1989).  To prevail, a claimant must "show that the conditions of the workplace . . . caused the injury."  Plumb Rite Plumbing Serv. v. Barbour, 8 Va. App. 482, 484, 382 S.E.2d 305, 306 (1989).  "An injury 'occurs in the "course of employment" when it takes place within the period of employment,

3

at a place where the employee may be reasonably expected to be, and while he is fulfilling the duties of his employment or is doing something which is reasonably incidental thereto.'" Lucas v. Lucas, 212 Va. 561, 563, 186 S.E.2d 63, 64 (1972) (citation omitted). "The phrase 'arising out of and in the course of the employment' covers those accidents which cause injury to an employee while he is discharging some duty he is authorized to perform in furtherance of his employer's business, either directly or indirectly." Id. at 563, 186 S.E.2d at 65.

Claimant's testimony proved that the chair which caused his injury was unusual and was different from a normal office chair. Claimant stated that when he sat down, the chair went back further and quicker than he would have expected from a normal office chair. This evidence established that while at Blakely's, claimant sustained an injury causally connected to a risk associated with the conditions of his employment. The fact that the general public would have been exposed to the risk of injury from the chair is of no consequence. The "actual risk" test adopted in Virginia "requires only that the employment expose the workman to the particular danger from which he was injured, notwithstanding the exposure of the public generally to like risks." Id. at 563, 186 S.E.2d at 64.

With respect to the "in the course of" prong, although no evidence showed that employer required claimant and his co-workers to take the truck to Blakely's for repair, it was

4

obvious that by doing so, employer benefitted. Having the truck repaired quickly allowed the employees to return to the jobsite and continue working. Moreover, the commission was entitled to infer from the lack of objection by Bryant, who testified at the hearing, and from his payment of the invoice for the repair work, that employer approved of the repairs. In short, when claimant injured his back he was at a place he was reasonably expected to be while engaged in an activity incidental to his employment. He was not on a mission of his own wholly unconnected with his employment.

Under these circumstances, claimant's injury arose out of and occurred in the course of his employment. "To bar an employee from protection of Workmen's Compensation benefits because he voluntarily acted in his employer's interest would be to discourage constructive initiative, which is not a desirable result." Id. at 564, 186 S.E.2d at 65.

## II.

"The actual determination of causation is a factual finding that will not be disturbed on appeal if there is credible evidence to support the finding." Ingersoll-Rand Co. v. Musick, 7 Va. App. 684, 688, 376 S.E.2d 814, 817 (1989).

The evidence showed that when claimant returned at the jobsite on July 6, 1994, his back pain was so severe that he had to lie down for approximately two and one-half hours. Thereafter, he sought medical treatment at the Mary Washington

5

Hospital emergency room. The emergency room physician recorded a history of claimant developing lower back pain and left leg pain after hyperextending his back at work that day. The emergency room Nursing Assessment Form reflects that claimant felt a pop in his back when he leaned back in a reclining chair. The emergency room attending physician diagnosed acute back strain.

On July 13, 1994, Dr. Michael B. O'Brien, an orthopedic surgeon, examined claimant. Claimant gave Dr. O'Brien a history of straining his back when he forcefully sat down at work on July 6, 1994. Dr. O'Brien diagnosed lower back strain. Claimant returned to Dr. O'Brien on October 27, 1994. At that time, claimant reported extreme back pain. On October 28, 1994, Dr. O'Brien reported that claimant's back was sore and he was experiencing left leg pain. On November 9, 1994, Dr. O'Brien reported that a November 4, 1994 MRI revealed a moderate herniated disc on the left at L4-5 and a larger herniated disc at L5-S1. Dr. O'Brien noted that these discs had not changed since a December 1991 MRI performed by Dr. Lucey.[1] Dr. O'Brien noted that claimant had a new moderate centrally herniated disc at L3-4. Dr. O'Brien recommended that claimant undergo back surgery.

---

[1]Claimant injured his back in 1991. However, he testified that he did not suffer from any leg pain related to that injury, and he was not suffering from any back or leg pain immediately before the July 6, 1994 accident. Claimant was also involved in a motor vehicle accident on April 22, 1994, which resulted in neck pain.

On August 3, 1995, Dr. O'Brien, responding to employer's attorney's written question, checked "yes" in response to whether it was his opinion that the July 6, 1994 incident did not cause claimant's herniated disc at L3-4.  Employer's attorney described the July 6, 1994 incident as claimant being taken by surprise as he leaned back in a reclining chair and then tried to catch himself.  On August 14, 1995, in response to written questions posed by claimant's attorney, Dr. O'Brien indicated that he had changed his opinion.  Dr. O'Brien opined to a reasonable degree of medical certainty that claimant's herniated disc at L3-4 was caused by the July 6, 1994 incident.

In his September 5, 1995 deposition, Dr. O'Brien stated that claimant did not exhibit any radicular leg pain during his initial July 13, 1994 examination.  Therefore, Dr. O'Brien diagnosed a simple lumbar strain.  However, Dr. O'Brien stated that his findings on that date were not inconsistent with a central herniated disc.  He noted that claimant first reported left leg pain on October 27, 1994.  Dr. O'Brien's physical findings on that date were different from those on July 13, 1994, because the straight leg raising test was positive on the left side at sixty degrees.  Dr. O'Brien opined that if there was enough force involved in the July 6, 1994 incident, "it is possible and it is reasonably medically certain that that trauma could have been enough to cause a herniated disc at L3-4."  Dr. O'Brien opined that if enough force was placed on claimant's back

as he leaned back in the chair, this could cause the disc to rupture.

While noting that Dr. O'Brien's opinions appeared somewhat inconsistent, the commission found that Dr. O'Brien's deposition testimony provided sufficient evidence to prove that claimant's herniated disc at L3-4 was caused by the July 6, 1994 accident. The commission, in its role as fact finder, was entitled to weigh the medical evidence and the credibility of the witnesses and to accept Dr. O'Brien's opinion. "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses." Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991). Dr. O'Brien's opinion is not inherently incredible and it provides credible evidence to support the commission's finding. Therefore, we will not disturb this finding on appeal.

For these reasons, we affirm the commission's decision.

Affirmed.