COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Felton and Senior Judge Willis


JASON SHORTT

                                                  MEMORANDUM OPINION[*]

v.      Record No. 1973-03-2                             PER CURIAM
                                                NOVEMBER 18, 2003

LDC MASONRY, INC. AND
 ERIE INSURANCE COMPANY


FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

(William F. Karn; Butler Williams & Skilling, P.C., on brief), for
appellant.

(Daniel E. Lynch; John T. Cornett, Jr.; Williams & Lynch, on brief),
for appellees.


Jason Shortt (claimant) contends the Workers' Compensation Commission erred in finding he failed to prove his February 14, 2002 injury by accident occurred in the course of his employment. Upon reviewing the record and the parties' briefs, we conclude that this appeal is without merit. Accordingly, we summarily affirm the commission's decision. Rule 5A:27.

On appeal, we view the evidence in the light most favorable to LDC Masonry, Inc. (employer), the party prevailing before the commission, together with all reasonable inferences that may be drawn. See Great Eastern Resort Corp. v. Gordon, 31 Va. App. 608, 610, 525 S.E.2d 55, 56 (2000).

In December 2001, claimant began working for employer as a brick mason on a large commercial project for the Henrico Water Treatment Plant. David Sharp, who drove a forklift for employer, provided claimant with a ride to and from work each day. Sharp was required to

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

be at work at 6:30 a.m. Claimant's regular work hours were from 7:00 a.m. until 3:30 p.m. However, if the temperature was less than thirty-seven degrees, the brick masons could not start laying brick until it got warmer. Laborers began work first thing in the morning regardless of the outside temperature. On cold days, when claimant got to work early with Sharp, he "s[at] in the car and wait[ed] a half hour or 45 minutes."

On February 14, 2002, claimant arrived at work with Sharp at 6:45 a.m. The outside temperature at that time was nineteen degrees. At the end of the prior workday, claimant's supervisor, Frank Coluccio, had told claimant and the other brick masons that they were not going to start laying brick until 9:00 a.m. on February 14, 2002, because the temperature was going to be too cold. Claimant and Sharp exited Sharp's car, and Sharp began to warm up a forklift. Claimant stood in front of the car. It was cold and windy. Claimant saw Frankie Dodson, a laborer, on a scaffold in front of him, struggling to transfer bricks from one level to a higher level. Claimant hollered to Dodson and asked if he needed help. Dodson responded, "yes," so, claimant went to help him.

Claimant and Dodson stocked one level with bricks from the level below, and claimant was on the way up to the next level when the scaffold railing came off in his hand and he fell and broke his left ankle and right foot. Claimant's accident occurred around 8:00 a.m., after he had been on the scaffolding for approximately forty-five minutes. Claimant admitted there were more than ten laborers on the job site that morning and that employer did not hire him to help laborers. He also stated that "it [was] unusual for a spoiled brick layer to help out a laborer . . . ." Claimant admitted another laborer could have helped Dodson. Claimant assumed he was going to get paid for the time he spent helping Dodson, because while he was working on the scaffolding, Coluccio and a man named "Larry" walked by and looked at claimant, but did not say anything. Claimant testified that Coluccio passed by him two to three times.

Claimant had not signed in to work before his accident. He assumed he would have signed in around 9:00 a.m. Employer did not pay claimant for the work he performed on February 14, 2002. Claimant assumed that "being up there on the scaffolding and being seen, that [he] would have been paid for that subsequent to [his] fall." Claimant testified that no one associated with employer ever directly told him not to help a laborer. He contended that he had performed labor tasks on other mornings, as instructed by employer, while he was waiting for laborers to make the mortar and that he was paid for that work. Those tasks involved making saw cuts and setting up scaffolding. He admitted that those occasions did not occur before they could begin laying bricks because it was too cold, but rather they happened because the laborers did not have the mortar ready at the time the brick masons were supposed to start work at 7:00 a.m. Employer paid claimant twenty dollars per hour, while Dodson, a skilled laborer, was paid between eleven and twelve dollars per hour.

Coluccio, employer's superintendent, testified that the brick masons were not to report for work until 9:00 a.m. on February 14, 2002, due to the expected cold temperature. Coluccio testified that he always started and stopped the work of the brick masons. Coluccio stated that the brick masons were not expected to be working in any capacity before "they get the green light from [him]" to start working. Coluccio stated that claimant was not "on the clock" nor was he being paid for his time when he fell off the scaffolding at 8:00 a.m. on February 14, 2002. Coluccio testified that the brick masons were not expected to offer any assistance to laborers on the job. He denied asking claimant to do any task that would be considered a laborer's task. He explained that the task of cutting bricks, which could be done by laborers or brick masons, was left to the discretion of the masons. They could perform that task if they needed to do so in order to continue working, rather than wait for a laborer. Coluccio denied seeing claimant on the scaffolding at any time on the morning of February 14, 2002 before his accident, but agreed that

he may have walked by. Claimant never asked Coluccio if he could start work early that morning to help out Dodson. The work that claimant was doing when he fell was typically performed by a laborer, not a brick mason. Coluccio estimated that there could have been up to twenty-five laborers on the job site that morning. Coluccio denied that the work claimant was performing when he was injured was beneficial to employer. He described Dodson as a "qualified man" who "could have done the job and had the time to get the job done."

"To qualify for workers' compensation benefits, an employee's injuries must result from an event 'arising out of' and 'in the course of' the employment." Smithfield Packing Co., Inc. v. Carlton, 29 Va. App. 176, 180, 510 S.E.2d 740, 742 (1999) (quoting Pinkerton's, Inc. v. Helmes, 242 Va. 378, 380, 410 S.E.2d 646, 647 (1991)). "Whether an injury arises out of and in the course of employment involves a mixed question of law and fact, which we review de novo on appeal." Blaustein v. Mitre Corp., 36 Va. App. 344, 348, 550 S.E.2d 336, 338 (2001). However, the findings of fact made by the commission are binding upon us when supported by credible evidence. See Ablola v. Holland Rd. Auto Center, Ltd., 11 Va. App. 181, 183, 397 S.E.2d 541, 542 (1990).

"An injury 'occurs in the "course of employment" when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incidental thereto.'" Lucas v. Lucas, 212 Va. 561, 563, 186 S.E.2d 63, 64 (1972) (citation omitted).

> "If the voluntary act of an employee which causes an injury is sufficiently related to what the employee is required to do in fulfilling his contract of service, or is one in which someone in a like capacity may or must do in the interest of his employer's business, the fact that the employee was not actually required to perform the act will not impair his right to recover compensation."

Id. at 564, 186 S.E.2d at 65 (citation omitted).

- 4 -

Based upon this record, the commission ruled that claimant failed to prove his injuries occurred in the course of his employment. In so ruling, the commission found as follows:

> The claimant testified that the employer did not direct him to help the laborer prior to his scheduled start time of 9:00 a.m. on the morning of February 14, 2002. The claimant also testified that he was hired as a brick mason, not as a laborer. Mr. Coluccio testified that Frankie Dodson was a qualified laborer and that there were approximately twenty-five laborers working that morning. The evidence establishes that the claimant, a skilled brick mason, was not required to move bricks up on the scaffold as part of his job duties, nor was he required to work before 9:00 a.m. on that particular day. We conclude that the claimant was not where he was reasonably expected to be, and was not reasonably fulfilling the duties of his employment at the time of the accident.

Credible evidence supports the commission's conclusion that employer could not reasonably expect claimant to be working before 9:00 a.m. on February 14, 2002, nor could employer reasonably expect claimant to be assisting a laborer to move bricks up on to the scaffolding before work hours that day. Claimant arrived at work early that day as an accommodation to himself, not employer, because Sharp provided claimant a ride to work. Claimant, an hourly-paid employee, had not signed in to work before his accident and was not being paid by employer at that time. On February 13, 2002, claimant's supervisor told him that he would not begin work until 9:00 a.m. the next day due to the expected cold temperatures, which would prevent laborers from making mortar before that time. Claimant admitted that brick masons did not normally assist laborers and that he was not hired to help laborers. Employer did not authorize or instruct claimant to assist the laborers in moving bricks up on to scaffolding before 9:00 a.m. on February 14, 2002.

Based upon this record, employer could not reasonably expect claimant to have been working on scaffolding assisting a laborer before 9:00 a.m. on February 14, 2002, and claimant was not reasonably fulfilling the duties of his employment or doing something reasonably incidental thereto when he incurred his injuries. Employer did not authorize or instruct claimant

- 5 -

to assist Dodson. Moreover, claimant's voluntary act was not sufficiently related to his duties as a brick mason, or one that a brick mason might or must do in the interest of employer's business. Credible evidence proved that there were many laborers on the job site who could have assisted Dodson.

For these reasons, we affirm the commission's decision that claimant's injuries did not occur in the course of his employment.

<u>Affirmed.</u>