COURT OF APPEALS OF VIRGINIA

Present: Judges Russell, Malveaux and Senior Judge Clements
Argued at Richmond, Virginia

TRICIA HAYES

v.      Record No. 1610-18-2

NOBILITY INVESTMENTS, LLC AND
 FLORIDA HOSPITALITY MUTUAL
 INSURANCE

MEMORANDUM OPINION* BY
JUDGE MARY BENNETT MALVEAUX
APRIL 30, 2019

FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

Michael J. Beste (Reinhardt Harper Davis, PLC, on briefs), for
appellant.

Roberta Ann Perko (Christopher M. Kite; Lucas & Kite, PLC, on
brief), for appellee.

Tricia Hayes ("claimant") appeals a decision of the Virginia Workers' Compensation

Commission ("the Commission") denying her claim for benefits. She argues the Commission

erred in three ways: by not precluding Nobility Investments, LLC ("employer") from arguing

that climbing ladders was beyond the scope of her pre-injury job; in holding that she is able to

return to her pre-injury job when she remains unable to perform certain tasks she performed prior

to her injury; and in holding that several pre-injury tasks which she performed were beyond the

scope of her pre-injury job duties. For the following reasons, we affirm the Commission's

decision.

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

UNPUBLISHED

## I. BACKGROUND

"On appeal from a decision of the . . . Commission, the evidence and all reasonable inferences that may be drawn from that evidence are viewed in the light most favorable to the party prevailing below." Anderson v. Anderson, 65 Va. App. 354, 361 (2015) (quoting Artis v. Ottenberg's Bakers, Inc., 45 Va. App. 72, 83 (2005) (*en banc*)).

So viewed, the evidence established that claimant worked as a night auditor at employer's hotel. During the night shift on May 18, 2015, a guest complained about a beeping smoke detector in their room. Claimant went to the room to remove the device's battery. While doing so, she fell off a ladder and sustained an injury to her left knee.

Claimant received treatment from Dr. William Beach, who performed surgery on her left knee in August 2015. She returned to light-duty work in December 2015 and remained with employer until February 2016. Following a series of claims filed by claimant, and pursuant to an agreement between the parties, the Commission entered an agreed order on January 12, 2017. Under the terms of that order, the parties stipulated that claimant sustained a compensable accident involving a left knee injury on May 18, 2015. Further, they agreed that a July 2016 functional capacity evaluation indicated a permanent partial disability rating of twenty-five percent and released claimant to medium-duty work. The parties additionally stipulated that Dr. Beach had adopted and affirmed the twenty-five percent disability rating and indicated claimant had reached maximum medical improvement as of July 26, 2016. The order also memorialized the parties' agreement that claimant was entitled to a lifetime medical award and payment of temporary total disability benefits, temporary partial disability benefits, and permanent partial disability benefits for certain finite periods.

The subject of this appeal is claimant's subsequent claim seeking a resumption of temporary total disability benefits for her left knee injury beginning July 10, 2017 and

continuing.[1]  Employer defended the claim, in part, by arguing that any restrictions on claimant's

work activities were consistent with her pre-injury job duties, and thus claimant is not entitled to

payment of any lost wages.

    In deposition and hearing testimony, claimant testified about her pre-injury job duties.

She stated that as a night auditor, she "took care of the [front] desk" by herself from 11:00 p.m.

to 7:00 a.m.  This entailed "tak[ing] care of the customers as they came and went" and "tak[ing]

care of the computer work."  There were no chairs at the front desk, but when customers were

not around, claimant could sit in an office behind the front desk to "do other things," including

paperwork and other auditing work.  Claimant testified that although checking guests into and

out of the hotel was the primary function of her job, she also "ha[d] to do" other tasks as well.

These included helping to "start up . . . the kitchen for the morning" and restocking the hotel's

"sweet shop" and customer rewards center.  While restocking, claimant had to crouch down to

retrieve items from storage and then place them on shelves.  Claimant also testified that prior to

her accident, she had changed the batteries in smoke detectors "[m]any times" and was never

told not to do so.

    Claimant stated that when she returned to work in December 2015, she understood her

work restrictions to include prohibitions on lifting or pulling more than twenty-five pounds,

standing for longer than twenty-five minutes, or kneeling, squatting, and "reaching up high."

---

[1] Claimant had previously filed a claim for benefits in which she sought to add right knee and right leg injuries as compensable consequences of her accident.  When she filed the claim at issue here, claimant initially sought temporary total and temporary partial disability benefits beginning May 28, 2017 and continuing.  At a hearing before the deputy commissioner, claimant withdrew her claims for right leg injuries and temporary partial disability benefits.  She proceeded on her right knee and temporary total disability benefits claims after amending the date from which she sought temporary total disability benefits.  The Commission majority held that claimant had failed to prove a compensable consequence injury to her right knee.  Claimant did not appeal that decision, and matters pertaining to her right knee are not at issue in this appeal.

Claimant agreed with employer's counsel that when she returned to work, employer accommodated and provided her with work within those restrictions. Claimant was moved from the night shift to daytime hours, during which she was not the only front desk employee, and employer provided her with a chair at the front desk. Claimant testified that by using the chair, she could perform the essential functions of her job. When counsel for employer asked claimant whether, "from the standpoint of doing your pre[-]injury job, you could do it just as easily from the chair as not[,]" claimant replied, "Yes." However, claimant also testified that because of her work restrictions, there were other pre-injury tasks she could not have performed, including preparing for breakfast and restocking the sweet shop and reward station.

Raymond Ledo, the hotel's general manager during claimant's employment, testified about claimant's job duties. He stated that front desk staff were responsible for checking guests into and out of the hotel, answering telephone calls, and making reservations. In addition to these tasks, the night auditor was also responsible for processing certain paperwork. Ledo noted that all of the job's "essential functions" could be performed from computer terminals which were located at the front desk and in an adjacent office equipped with sitting desks. At the office terminals, claimant could both make reservations and check in guests. Ledo also testified that the adjacent office contained chairs and was "always available" for use by the front desk staff and that during slow periods staff would "hang out [there] and . . . watch the camera and [when] they see people come in, they come up [front] right away and attend to the guests." Working at the front desk did not "necessarily mean . . . physically being up there," because with "all the off time that [front desk staff] have in a shift they do sit back [in the office] and they do have an option to sit and rest. They even eat back there." When Ledo was asked whether claimant ever would have had to stand, or ever had stood, at the front desk for more than twenty-five minutes at a time, Ledo replied, "maybe by choice."

Ledo specifically denied that working in the kitchen and restocking items were part of claimant's job requirements. A "breakfast team" would arrive at the hotel at 5:00 a.m., and although night auditors with available time would "tend to get . . . started for them," such conduct was not required. Had claimant not assisted the kitchen staff, Ledo testified, she would not have been reprimanded for failing to do so. Likewise, restocking items was not one of claimant's job requirements, and she would not have been reprimanded had she not engaged in such activity. Although Ledo "absolutely" appreciated claimant's efforts, claimant "kind of initiated that" and simply "tended to do it," even though "[i]t wasn't anything that anyone ever told her to do." Further, Ledo specifically denied that climbing ladders to remove smoke detector batteries was an essential function of claimant's job; rather, "she just took it upon herself to do what she did." Claimant's options when confronted with a room problem were either to move the complaining guest to another room or to contact the hotel's on-call maintenance engineer. Ledo also denied that working at the front desk would require a person to lift more than twenty-five pounds.

In addition to her testimony, claimant also submitted her July 2016 functional capacity evaluation in support of her claim. The evaluation indicated a twenty-five percent permanent impairment of claimant's left knee and residual functional capacity limited to "performance of work with medium-light physical demand characteristics." Because no formal job description had been provided for claimant's position, the evaluation relied upon published occupational reference works to "identify the essential job tasks and physical demand characteristics associated with [claimant's] premorbid job as a *Night Auditor*." Based upon those sources, the evaluation concluded that work as a night auditor

> entails assisting hotel customers and reconciling the hotel's books
> during the evenings. The *Night Auditor* is responsible for auditing
> rooms being occupied and determining availability at the hotel.
> Maintaining attractive and orderly desk and lobby areas is also

required.  Performance of the essential job tasks requires frequent sitting, handling and fingering.  Occasional stooping, walking and standing are also be necessary [*sic*].  Occasional lifting and carrying of weight loads of up to 20 pounds is necessary with occasional pushing and pulling of rolling carts.  The job is identified as a light physical demand occupation based on the U.S. Department of Labor criteria.

The evaluation concluded that claimant's residual functional capacity was adequate for performance of her pre-injury job as a night auditor provided that certain recommended restrictions could be "integrated into her job description."  Those restrictions included prohibitions on kneeling, squatting, and crouching.  In addition, claimant was not to walk for more than fifteen minutes or stand for more than twenty-five minutes at a time; lift more than thirty pounds or carry more than twenty-five pounds; climb stairs with loads; or push or pull more than ninety-two pounds or sixty pounds, respectively.

Claimant also submitted medical records from Dr. Beach, including treatment notes from office visits on July 26 and October 11, 2016.  In notes from the former visit, Beach acknowledged claimant's permanent partial disability rating and stated that claimant could "work within the[] parameters" outlined by the functional capacity evaluation.  In notes from the latter visit, Beach indicated that he had provided claimant with documentation for her to work subject to the restrictions specified in the functional capacity evaluation and that she should avoid any climbing, squatting, stooping, and kneeling.

The deputy commissioner denied claimant's claim after finding that any restrictions placed upon her did not prevent her from doing her pre-injury job.  Claimant requested review by the full Commission.  On review, a majority of the Commission affirmed the deputy commissioner's decision.  The Commission noted the restrictions described in the functional capacity evaluation and Dr. Beach's July 26 and October 11, 2016 treatment records.  Relying upon Ledo's testimony, including his statements that claimant was not required to change

batteries, restock the sweet shop, or assist in preparing for breakfast, the Commission concluded that although it "recognize[d]" that "claimant's performance of the extra duties was for [employer's] benefit," it was "not convinced" that claimant's pre-injury job position "required these particular tasks." Consequently, the Commission found that "claimant's work restrictions do not prevent her from preforming her pre-injury work."

Claimant appealed the Commission's decision to this Court.

## II. ANALYSIS

### A. Issue Preclusion

Claimant argues the Commission erred when it did not preclude employer from arguing that her pre-injury job tasks excluded climbing ladders. Claimant notes the Commission's agreed order of January 12, 2017, which states that she sustained a compensable accident involving a left knee injury on May 18, 2015. She also notes that to be compensable under the Virginia Workers' Compensation Act ("the Act"), an injury by accident must arise out of and in the course of the claimant's employment. See Code § 65.2-101. Thus, claimant argues, since she was climbing a ladder when she suffered her injury by accident, climbing ladders was necessarily "adjudicated" as a required condition of her pre-injury job when the Commission "determined that her accident 'arose out of' her employment." Consequently, claimant maintains that under principles of issue preclusion, employer should not have been permitted to argue that climbing ladders was not among her pre-injury work duties.

Issue preclusion, or collateral estoppel, is a species of *res judicata*, AKAK Corp. v. Commonwealth, 38 Va. App. 634, 638-39 (2002), and "[t]he doctrine of *res judicata* is applicable to decisions of deputy commissioners and the full [C]ommission," Tyco Elecs. v. Vanpelt, 62 Va. App. 160, 170 (2013) (quoting Rusty's Welding Serv., Inc. v. Gibson, 29 Va. App. 119, 128 (1999) (*en banc*)). "Issue preclusion bars 'successive litigation of an issue of

- 7 -

fact or law actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." Starbucks Coffee Co. v. Shy, 61 Va. App. 229, 241 (2012) (quoting Brock v. Voith Siemens Hydro Power Generation, 59 Va. App. 39, 45 (2011)). See also AKAK, 38 Va. App. at 638-39. "[T]he relationship of the [C]ommission to an award is that of a court to a judgment," and thus, "[a]n order by the [C]ommission awarding benefits to a claimant by agreement of the parties is a final determination of the matters which were actually, or *might have been*, litigated in that suit." Advance Auto and Indem. Ins. Co. of N. Am. v. Craft, 63 Va. App. 502, 515-16 (2014) (first and third alterations in original) (first quoting Brock, 59 Va. App. at 47; then quoting Shy, 61 Va. App. at 240).

We are unpersuaded by claimant's argument. Claimant is correct in noting that the agreed order states that she suffered a compensable injury by accident on May 18, 2015, and that the order thus provides that her injury arose out of and in the course of her employment. She is also correct in noting that she was climbing a ladder when she suffered the injury by accident which was the basis for the Commission's award of benefits. However, claimant is incorrect in arguing that these facts, taken together, amount to an adjudication that climbing ladders was a required condition of her pre-injury employment.

To be compensable under the Act, an injury must "aris[e] out of and in the course of" the injured employee's employment. Code § 65.2-101; see also Vital Link, Inc. v. Hope, 69 Va. App. 43, 54 (2018). The expressions "'[a]rising out of' and 'in the course of' [employment] are used conjunctively and are not synonymous." Va. Polytechnic Inst. and St. Univ. v. Wood, 5 Va. App. 72, 75 (1987) (quoting Conner v. Bragg, 203 Va. 204, 208 (1962)). The phrase "arising out of" refers to the injury's nature or cause, while the phrase "in the course of" refers to "the time, place and circumstances under which the accident occurred." Id. at 75-76. "[A]n

- 8 -

accident occurs in the 'course of employment' when it takes place within the period of employment, at a place where the employee may be reasonably expected to be, and while he is reasonably fulfilling the duties of his employment or is doing something which is reasonably incidental thereto." Clifton v. Clifton Cable Contracting, L.L.C., 54 Va. App. 532, 539 (2009). With respect to activities which are reasonably incidental to fulfilling employment duties, if an employee's "voluntary act . . . which causes an injury is sufficiently related to what [he] is required to do in fulfilling his contract of service, or is one in which someone in a like capacity may or must do in the interest of his employer's business," his right to receive compensation will not be impaired even though he was not required to perform the act. Lucas v. Lucas, 212 Va. 561, 564 (1972) (quoting 7 Sneider, Workmen's Compensation § 1662(a) (1945)). Thus, compensable injuries by accident that occur in the course of employment may result either from a claimant's acts performed in fulfillment of their required job duties, or from their voluntary acts which are reasonably related to the fulfillment of those required job duties.

In the instant case, it is uncontested that the act of climbing a ladder to remove a smoke detector battery was the act out of which claimant's injury arose—*i.e.*, that it was causally related to her injury. Further, it is clear from the Commission's agreed order awarding benefits that that act occurred in the course of claimant's employment. However, the order is silent on whether that act occurred in the course of claimant's employment because it was one of claimant's required job duties, or because it was a voluntary act that was reasonably incidental to the performance of her required job duties. Consequently, it cannot be said that the agreed order "adjudicated" ladder climbing as a required condition of claimant's pre-injury job. Absent such an adjudication, we hold that the Commission did not err when it did not preclude employer from arguing that claimant's pre-injury job tasks excluded climbing ladders.

B.  Claimant's Ability to Return to her Pre-injury Employment

Claimant further argues the Commission erred in holding that she is able to return to her pre-injury job even though she remains unable to perform certain tasks which she performed prior to her injury.  Specifically, she contends that climbing ladders to change smoke detector batteries, helping to prepare for breakfast, squatting, crouching, and kneeling to restock the hotel sweet shop, and standing for longer than twenty-five minutes were required tasks of her pre-injury employment.  Because she remains restricted from performing those tasks, claimant argues, she is unable to return to her pre-injury job and is thus entitled to compensation under the Act.

"A [claimant] seeking workers' compensation bears the burden of proving his disability and the periods of that disability," and whether a claimant suffered a continuing disability is a question of fact.  Vital Link, 69 Va. App. at 64.  "In a workers' compensation case, '[t]he threshold test for compensability is whether the employee is 'able fully to perform the duties of his pre[-]injury employment.'"  Clinchfield Coal Co. v. Parrott, 22 Va. App. 443, 446 (1996) (quoting Celanese Fibers Co. v. Johnson, 229 Va. 117, 120 (1985)).

"[W]e are bound by the [C]ommission's factual findings where those findings are supported by credible evidence in the record," Pruden v. Plasser Am. Corp., 45 Va. App. 566, 574 (2005), and "[t]he fact that there is contrary evidence in the record is of no consequence," Herbert Clements & Sons, Inc. v. Harris, 52 Va. App. 447, 452 (2008) (quoting Allen & Rocks, Inc. v. Briggs, 28 Va. App. 662, 673 (1998)).  "In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of the witnesses."  Smith-Adams v. Fairfax Cty. Sch. Bd., 67 Va. App. 584, 590 (2017) (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894 (1991)).

We are not persuaded by claimant's argument. The Commission found that none of the tasks specified by claimant were requirements of her pre-injury job as a night auditor, and credible evidence in the record supports that finding.

With respect to the first three tasks described by claimant—climbing ladders to change smoke detector batteries, helping to prepare for breakfast, and squatting, crouching, and kneeling to restock the hotel sweet shop—the hotel's general manager, Raymond Ledo, specifically testified that claimant was not required to perform those tasks and would not have been sanctioned had she not performed them. Further, the functional capacity evaluation submitted by claimant did not identify them as essential job tasks of a night auditor.

With respect to standing for longer than twenty-five minutes, Ledo testified that the essential functions of claimant's night auditor job could be performed at computer terminals located at the front desk and in an adjacent office which contained sitting desks. At the office terminals, claimant could both check in guests and make reservations. Ledo stated that the office contained chairs and was always available for use by the front desk staff, who would "hang out" and even eat there during slow periods. Staff could monitor the hotel's video cameras from the office, and if they saw a guest approach the front desk, they could "come up [front] right away" and attend to them. Ledo made clear that working at the front desk did not continuously require "physically being up there," because there was "off time" during shifts when staff had "an option to sit and rest" and did sit and rest in the office. Claimant herself testified she could sit in the office to do various things including paperwork and other auditing tasks. Further, when Ledo was asked whether claimant would ever have had to stand or did stand at the front desk for more than twenty-five minutes at a time, he replied, "maybe by choice."

Based upon the record, we conclude the Commission did not err in finding that the tasks described by claimant were not required by her pre-injury job, and thus that her restriction from performing those tasks does not prevent her from performing her pre-injury work.

## C. Employer's Acquiescence to and Benefit from Claimant's Voluntary Acts

Claimant also argues that even if employer did not require her to stand for longer than twenty-five minutes, climb ladders, or squat, crouch, and kneel to restock the hotel sweet shop, the Commission erred in holding that these tasks were not part of her pre-injury job duties. She contends that such tasks should have been considered job duties for purposes of determining compensability because employer knowingly acquiesced to and benefitted from them.

As noted above, compensable injuries may arise from acts voluntarily performed by an employee if those acts are reasonably incidental to the employee's fulfillment of their job duties. See Clifton, 54 Va. App. at 539; Lucas, 212 Va. at 564. Here, the Commission, while it "recognize[d]" that claimant's "performance of the extra duties was for [employer's] benefit," ruled only that it was unconvinced that claimant's pre-injury job position "*required* these particular tasks." (Emphasis added). Thus, the Commission only made a finding with respect to what pre-injury tasks were required of claimant by employer. It did not make a finding with respect to whether any non-required tasks performed by claimant were sufficiently incidental to the performance of her required work duties that they could potentially support a compensation award for any resulting injuries. "[O]n appeal to this Court, [where] we have no [C]ommission ruling to review on the issue," appellate review is barred by Rule 5A:18. Mouhssine v. Crystal Cty. Laundry, 62 Va. App. 65, 82 (2013) (quoting Hodnett v. Stanco Masonry, Inc., 58 Va. App. 244, 253 (2011)). See also Rule 5A:18 ("No ruling of the . . . Commission will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling."). Consequently, because the Commission never ruled on the specific legal issue now

presented by claimant, we will not consider that issue. Further, although Rule 5A:18 contains exceptions for good cause or to meet the ends of justice, claimant does not argue that those exceptions apply and this Court will not invoke them *sua sponte*. See <u>Friedman v. Smith</u>, 68 Va. App. 529, 544 (2018).

### III. CONCLUSION

We hold that the Commission did not err in not precluding employer from arguing that climbing ladders was beyond the scope of claimant's pre-injury job. Further, the record supports the Commission's finding that claimant's work restrictions do not prevent her from performing her pre-injury work as a night auditor. Consequently, we affirm the Commission's decision denying claimant's claim for temporary total disability benefits.

<u>Affirmed.</u>