## MORRELL v. COMMISSIONER OF INTERNAL REVENUE.

### No. 6955.

Circuit Court of Appeals, Third Circuit.

Oct. 3, 1939.

Wm. Cutler Thompson, of Washington, D. C., and Emanuel Friedman, of Philadelphia, Pa., for petitioner.

James W. Morris, Asst. Atty. Gen., and Sewall Key and Alexander Tucker, Sp. Assts. to Atty. Gen., for respondent.

Before BIGGS, MARIS, and CLARK, Circuit Judges.

CLARK, Circuit Judge.

The income tax has from its inception allowed the taxpayer some form of credit against net income for "dependents". The various departmental rulings and Board decisions on the question of the allowance of that credit all reflect a fundamental factual pattern. We invariably find the taxpayer seeking credit for the support of his relatives (generally from one to five in number). See Paul and Mertens, The Law of Federal Income Taxation, Sec. 30.-10; BTA Index Digest p. 295; 391 CCH par. 362; Prentice Hall Federal Tax Service 1939, para. 4008–4080. Thus in Croker v. Helvering, 67 App.D.C. 226, 91 F. 2d 299 (the widow of Richard Croker), credit was claimed with respect to an adult sister and a sixteen year old niece. That was the first case on the subject to reach the courts. The second is at bar, 391 CCH par. 362; Prentice Hall Federal Tax Service 1939, para. 4008–4080, above cited. Petitioner-appellant here claims the credit with respect to sixty-four orphans and quasi orphans, none of whom are related to her.

This curious numerical and genealogical expansion has its source in an even more curious train of events. The St. Francis Industrial School for orphans had been endowed by petitioner's sister. For a number of years, the income from the endowment fund had been insufficient to pay the expenses of the school. Yet each year petitioner had generously eliminated the deficit by a timely contribution. In the year 1933, however, petitioner's manifestation of altruism became more complex. She entered into a formal written contract with St. John's Orphan Asylum (which owned the industrial school) whereby she engaged to pay to the orphanage the maintenance expenses at the school of sixty-four named boys then at the point of graduating, so to speak, from the orphanage. In accordance with this agreement (enforceable perhaps by the orphans themselves, MacDaniels Estate, 305 Pa. 17, and cf. 2 Williston on Contracts, Revised Edition, sec. 357, p. 1049) the sixty-four boys entered the school in July. Their maintenance expenses, $12,533.33, were duly paid in December.

By so shaping the performance of her good works, petitioner has, we are told, brought herself squarely within the credit provisions of the 1932 Act. Mathematically her position is strangely and wonderfully sound. The board and tuition of each boy as computed by the school's director turned out to be exactly $33.33⅓ per month, or $400 a year. That is the pre-

cise amount of the credit; $12,533.33 (the actual expenditure) is the precise allowable amount of the credit properly prorated, Revenue Act of 1932, Sec. 25 (a), 47 Stat. 184; Regulations 77, Article 295. Legally, on the other hand, petitioner's position is quite a different matter. The statute reads:

"There shall be allowed for the purpose of the normal tax, but not for the surtax, the following credits against the net income:

\* \* \* \* \* \*

"(d) *Credit for Dependents.*—$400 for each person (other than husband or wife) *dependent upon and* receiving his chief support from the taxpayer if such dependent person is under eighteen years of age or is incapable of self-support because mentally or physically defective". Revenue Act of 1932, C. 209, 47 Stat. 169, 184, sec. 25 (Italics ours.) ·

■ Counsel fasten upon the phrase "receiving his chief support from the taxpayer". This is said to be the fundamental test of dependency. In amplification their brief appears to quote a definition contained in Treasury Regulations 77, Article 294: "A dependent is a person under eighteen years of age \* \* \* who is financially and not merely legally dependent upon a taxpayer for more than half of his support".

Our copy of the regulations puts it a little differently:

"A taxpayer, other than a non-resident alien who is not a resident of Canada or Mexico (see section 214), receives a credit of $400 for each person (other than husband and wife), whether related to him or not and whether living with him or not, *dependent upon and* receiving his chief support from the taxpayer, provided the dependent is either (a) under 18, or (b) incapable of self-support because defective.

"The credit is based upon actual financial dependency and not mere legal dependency. It may accrue to a taxpayer who is not the head of a family. But a father whose children receive half or more of their support from a trust fund or other separate source is not entitled to the credit". Treasury Regulations 77, Article 294 (Now Treasury Regulations 101, Article 25-6.) (Italics ours.)

We grant that this regulation is liberally phrased. We can concede, too, that petitioner has conformed to the superficial criteria, positive and negative, put forward by the Treasury Department. One key requirement, however, remains unsatisfied. We speak of the necessity for some bond other than the mere desire to benefit between the taxpayer and those for whom he contributes the chief support.

It needs no citation of authority to prove that our law is moulded to fit the earlier anthropological phenomenon of the clan. One might refer, for instance, to the consideration of love and affection, 18 C.J. pp. 164, 165, or the doctrine of insurable interest, 37 C.J. pp. 385–399. The legal concept of a dependent clearly stems from the same source. That concept has been defined with variations ad nauseam, by the legislatures and courts, especially in connection with workmen's compensation and wrongful death statutes. See Words and Phrases, Dependency-Dependents, First Series, Vol. 2, page 1991; Second Series, Vol. 1, page 1298; Third Series, Vol. 2, page 954; Fourth Series, Vol. 1, page 716; Fifth Series, Vol. 2, page 321. But all those definitions, statutory and judicial, comprehend an irreducible common denominator—actual support plus some form of preexisting and at least ethical obligation. As a large and, we think (though not cited by either side), analogous class of cases puts it: "Trivial or casual, or, perhaps, wholly charitable assistance would not create the relationship of dependency, within the meaning of the statute or by-laws. Something more is undoubtedly required. The beneficiary must be dependent upon the member in a material degree for support or maintenance or assistance, and the obligation on the part of the member to furnish it must, it would seem, rest upon some moral or legal or equitable grounds, and not upon the purely voluntary or charitable impulses or disposition of the member". McCarthy v. Supreme Lodge, etc., 153 Mass. 314, 26 N.E. 866, 867, 11 L.R.A. 144, 25 Am.St.Rep. 637. See also Fuller v. Supreme Council of Royal Arcanum, 64 Ind.App. 49, 115 N.E. 372; Royal Neighbors of America v. Fletcher, Tex.Civ.App., 230 S.W. 476; Allen v. Cunningham, 143 Tenn. 11, 223 S.W. 450; Bush v. Modern Woodsmen of America, 182 Iowa 515, 152 N.W. 31, 162 N.W. 59. The Congress is and has been fully conscious of this dual aspect of the concept. It inheres in the computation of army pay, 37 U.S.C.A. § 8, and in the ascertainment of those persons entitled to the adjusted

**36**

service pay of a deceased soldier, 38 U.S. C.A. § 662 (financial connection) and sec. 667 (personal connection).

We cannot, therefore, overlook the significance of the words of legal art "dependents" and "dependent upon". On their face they import the orthodox conception of dependency. Furthermore, their arrangement clearly indicates that there must be the two usual connections between the taxpayer and the "person", viz., dependency upon *and* receipt of chief support. Any other construction would, besides, thwart the universally admitted object of the statute. The credit for dependents, like the credit for the head of a family, is plainly designed to effectuate a system of income taxation based on the taxpayer's ability to pay. 3 Paul & Mertens, Law of Federal Income Taxation, sec. 30.07. Unlike the deductions for charitable contributions, it does not seek to reward a form of financial activity encouraged by governmental policy. 3 Paul & Mertens, Law of Federal Income Taxation, sec. 29.01. The practical distinction, from the taxpayer's point of view, is, we suggest, that between achieving bounty and having it thrust upon one. Like many another distinction in the law, it is one of degree. A socially minded person feels discomfort when confronted with the destitution of his fellows. There are some among those fellows at whose prospective suffering his reaction is stronger and akin to one of guilt. The support of dependents is compelled by the latter emotion. The support of other indigent persons, however, merely provides, etc., an outlet for charitable inclinations. No compulsion of the clan spirit—of "love and affection"—detracts from the ability to pay.

■ Petitioner's arrangement falls accordingly into the category of charity. Moreover it is charity of the type contemplated in the Revenue Acts. We cannot under the circumstances classify it as "private charity", i. e., a gift to an individual. See Havemeyer v. Commissioner, 2 Cir., 98 F.2d 706; Gimbel v. Com'r, 3 Cir., 54 F.2d 780; Bok v. McCaughn, 3 Cir., 42 F.2d 616, and cf. H. C. DuBois, v. Com'r, 31 B.T.A. 239. By limiting the amount of a charitable deduction to fifteen per cent of the taxpayer's net income, the Congress has set a point beyond which the policy of encouraging charity must yield to the policy of collecting revenue. It so happens (again curiously) that petitioner,

because of other contributions, has passed that point. She should, then, bear her fair share of the people's tax burden.

The decision of the Board of Tax Appeals is affirmed.