COURT OF APPEALS OF VIRGINIA


Present:   Judges Kelsey, Petty and Senior Judge Bumgardner
Argued at Richmond, Virginia


THOMAS EDWIN DUNNAVANT, JR.
                                                          OPINION BY
v.         Record No. 0969-07-2                  JUDGE D. ARTHUR KELSEY
                                                        FEBRUARY 12, 2008
NEWMAN TIRE COMPANY, INC. AND
  HARTFORD UNDERWRITERS INSURANCE COMPANY


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          Roger B. Stough (Gregory R. Nevins; Michael L. Brickhill,
          P.C.; Lambada Legal Defense Education Fund, on brief), for
          appellant.

          Anne C. Byrne (Warren H. Britt; Warren H. Britt, P.C., on
          brief), for appellees.


          Thomas Edwin Dunnavant, Jr. sought death benefits as a dependent of Phillip Dale

Pettus, an employee who died as a result of a workplace accident at Newman Tire Company.

The Workers' Compensation Commission found Dunnavant did not qualify as a statutory

dependent and rejected his claim for death benefits.  Dunnavant appeals, arguing the commission

erred as a matter of law.  We disagree and affirm.

                                                I.

          We view the evidence on appeal in the light most favorable to Newman Tire Company,

the prevailing party before the commission.  See Apple Constr. Corp. v. Sexton, 44 Va. App.

458, 460, 605 S.E.2d 351, 352 (2004); Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 72, 577

S.E.2d 538, 539 (2003).

          So viewed, the evidence showed that Pettus died as a result of an injury at work.

Claiming to be a statutory dependent, Dunnavant sought death benefits under Code § 65.2-516.

At the hearing before the deputy commissioner, Dunnavant testified that he moved into Pettus's home in 1997. Though Dunnavant had worked various jobs in the past, he claimed he stopped working in 2000 after being diagnosed with fibromyalgia and chronic fatigue syndrome. He offered the commission no medical reports or physician's testimony in support of this claim. Dunnavant also said he had been declared disabled by the Social Security Administration but offered no documentary evidence of such a declaration or copies of any SSA disability checks.

Dunnavant alleged Pettus paid the majority of Dunnavant's living expenses, while Dunnavant "contributed when [he] could" to the joint grocery bills. His SSA disability checks, Dunnavant testified, paid for his prescription medications. No such bills were offered into evidence, however. Dunnavant also offered the testimony of his mother and two friends to corroborate his alleged need for support and Pettus's benevolence toward him.

The deputy commissioner found this evidence insufficient to prove dependency under Code § 65.2-516. On review, the full commission unanimously agreed and held Dunnavant "failed to prove a relationship with the decedent beyond sharing a house and the ensuing economic dependencies that this entails." Pettus v. Newman Tire Co., Inc., VWC File No. 208-08-12, 2007 Va. Wrk. Comp. LEXIS 637, at *18 (Apr. 20, 2007). The commission explained:

> From the evidence presented, he has the status of a housemate, a situation that arises under many circumstances, but does not indicate a dependent relationship beyond the sharing of a household. At best, the situation could be considered "mutually assistive" . . . . Here, the parties lack the status of a blood, marital, or legal relationship, and the claimant has failed to prove a mental or physical disability that caused his dependency and prevented him from earning a livelihood.

Id. at *18-19. Because it was wholly "unaccompanied by medical evidence," id. at *19, the commission also found unpersuasive Dunnavant's testimony about the existence and extent of any medical condition justifying his claimed need for support.

- 2 -

II.

On appeal, Dunnavant argues that the commission misapplied the legal standard governing Code § 65.2-516 and erroneously failed to accept his testimony claiming to have been dependent on Pettus. We disagree.

The workers' compensation statute divides dependents into two classes. The first involves individuals "conclusively presumed" to be dependents solely because of their familial relationship to the decedent. Code § 65.2-515(A). Subject to certain exceptions, this class includes spouses, minor children, destitute parents, and adult children who are disabled or attending school. Id. Code § 65.2-516 recognizes that the traditional definition of dependency, however, can extend beyond the nuclear family categories of Code § 65.2-515(A). In this second class, "questions of dependency in whole or in part shall be determined in accordance with the facts as the facts are at the time" of the decedent's accident. Code § 65.2-516.

Because the statute "does not define dependency or specify the indicia of that status," Glassco v. Glassco, 195 Va. 239, 242, 77 S.E.2d 843, 845 (1953), membership in the second class of dependents depends on the "facts and circumstances of each particular case, from the amounts, frequency and continuity of actual contributions of cash or supplies, the needs of the claimants, and the legal or moral obligations of the employee." Va. Elec. & Power Co. v. Place, 150 Va. 562, 568, 143 S.E. 756, 758 (1928) (quoting Md. Cas. Co. v. Campbell, 129 S.E. 447, 448 (Ga. Ct. App. 1925)). The second class of dependents excludes a mere "situation of mutual assistance" between the decedent and the putative dependent. Miller & Long Co. v. Frye, 215 Va. 591, 594, 212 S.E.2d 258, 260 (1975).

While the second class relies "neither upon relationship nor presumption," it nonetheless must be predicated on specific factual circumstances qualifying the claimant for dependency status. Place, 150 Va. at 569, 143 S.E. at 759. That status presupposes the decedent owed some

- 3 -

form of "legal or moral" obligation of support, id. at 568, 143 S.E. at 758, thus distinguishing

true dependency from being subsumed within the broader "category of charity," Morrell v.

Comm'r, 107 F.2d 34, 36 (3d Cir. 1939).  The United States Court of Appeals for the Third

Circuit put the point this way:

> That concept [of dependency] has been defined with variations *ad nauseam*, by the legislatures and courts, especially in connection with workmen's compensation and wrongful death statutes.  But all those definitions, statutory and judicial, comprehend an irreducible common denominator — actual support plus some form of preexisting and at least ethical obligation. . . . "Trivial or casual, or, perhaps, wholly charitable assistance would not create the relationship of dependency . . . .  Something more is undoubtedly required. . . .  [I]t must, it would seem, rest upon some moral or legal or equitable grounds, and not upon the purely voluntary or charitable impulses or disposition of the member."

Morrell, 107 F.2d at 35 (citations omitted).  Thus, even if the decedent made contributions to the

claimant, "it is then necessary to determine whether or not the claimant was entitled, legally or

morally, to consider the contributions received from decedent as part of his or her necessary

livelihood" sufficient to justify the claimant's claim of dependency.  2 William R. Schneider,

The Law of Workmen's Compensation § 367, at 1195 (2d ed. 1932).[1]

In resolving the question of dependency, "a wide discretion is vested" in the commission

"to find as a fact whether the particular claimant is entitled to compensation" as a dependent.

Place, 150 Va. at 567, 143 S.E. at 758; see also Commonwealth v. McGuire, 188 Va. 444, 449,

---

[1] See also Complaint of Cambria S.S. Co., 505 F.2d 517, 524 (6th Cir. 1974) (recognizing that a dependency relationship typically requires "either a legal or moral obligation to support the dependent"); Superior Coal Co. v. Indus. Comm'n, 136 N.E. 762 (Ill. 1922) (noting that dependence relies "upon either a moral or legal duty"); Woodmen of World Life Ins. Soc'y v. Irick, 58 F. Supp. 202, 205 (D.S.C. 1944) (observing that the "law does not favor dependency not based upon legal and moral grounds"); Ga. Power & Light Co. v. Patterson, 166 S.E. 255, 256 (Ga. Ct. App. 1932) (holding that dependency status turns, in part, on the "legal and moral obligation of the employee" to the alleged dependent); Garbutt v. Stoll, 283 N.W. 624, 625 (Mich. 1939) (defining dependency to depend on a consideration of a "legal or moral obligation" owed to the alleged dependent); Ins. Co. of N. Am. v. Cooley, 162 S.E.2d 821, 823 (Ga. Ct. App. 1968) (restating dependency test to involve a consideration of "the legal or moral obligations of the employee" to provide support).

50 S.E.2d 284, 287 (1948) (recognizing the commission's "wide discretion" in dependency cases). We employ a highly deferential standard of review of commission factfinding. "This appellate deference is not a mere legal custom, subject to a flexible application, but a statutory command making clear that the commission's decision 'shall be conclusive and binding as to all questions of fact.'" Cent. Va. Obstetrics & Gynecology Assocs. v. Whitfield, 42 Va. App. 264, 279, 590 S.E.2d 631, 639 (2004) (quoting Code § 38.2-5011(A)).

In this case, Dunnavant was unrelated to Pettus and did not fit within the first class of individuals "conclusively presumed" to be dependents under Code § 65.2-515(A). Dunnavant instead had the burden of proving his status as a dependent within the second class of individuals covered by Code § 65.2-516. To prevail, therefore, Dunnavant's proof had to address the duration and scope of Pettus's "actual contributions" to Dunnavant's claimed "needs" and whether Pettus owed some "legal or moral" duty to support Dunnavant. Place, 150 Va. at 568, 143 S.E. at 758.

With respect to Pettus's contributions to Dunnavant's needs, the commission rejected the first premise of Dunnavant's claim — that he had any *genuine* need of support. Dunnavant claimed to be unable to work because of a medical condition but offered no medical evidence to support his allegations. He claimed to have been declared disabled by the Social Security Administration but offered no documentary proof of this declaration. Because of this conspicuous lack of easily available corroborating evidence, the commission refused to accept Dunnavant's claim that he was medically prevented "from earning a livelihood" and thus in need of any support from Pettus or anyone else. Pettus, 2007 Va. Wrk. Comp. LEXIS 637, at *19. We will not disturb this factual finding. No factfinder — whether a commission, a jury, or a trial judge — is required as a matter of law to accept as credible wholly unsupported assertions by a layman about the existence, extent, and duration of an allegedly debilitating medical condition.

We acknowledge Dunnavant's argument that, by considering the genuineness of his claimed need for support, the commission's reasoning (as well as ours) adds a showing of incapacity to the statutory definition of dependency under Code § 65.2-516. We find the criticism overstated, however. Because the statute does not "define dependency or specify the indicia of that status," Glassco, 195 Va. at 242, 77 S.E.2d at 845, we apply the traditional definition of dependency which accepts that "a claim of dependency will meet defeat if it appears that the claimant by the expenditure of such effort as, under all circumstances, ought fairly and reasonably to be expected of him is of ability to be self and family supporting according to the proper measure of such support." 2 William R. Schneider, *supra* § 367, at 1201. It is the requisite focus on the claimant's actual needs, not any judicially imported requirement of incapacity, that undermines Dunnavant's claim of dependency status under Code § 65.2-516.

As for whether Pettus had any legal or moral duty to support Dunnavant, the commission found the evidence proved nothing more than a "mutually assistive" relationship between two friends. Pettus, 2007 Va. Wrk. Comp. LEXIS 637, at *18. At best, the commission pointed out, Dunnavant's testimony showed he had no more than the mere "status of a housemate, a situation that arises under many circumstances, but does not indicate a dependent relationship beyond the sharing of a household." Id. That Dunnavant shared some sort of "living arrangement with the decedent," id. at *11, the commission did not deny. But this fact alone, the commission correctly reasoned, could not qualify him as a dependent. Absent some form of "legal or moral" obligation of support, Place, 150 Va. at 568, 143 S.E. at 758, nothing would distinguish true dependency from other forms of purely nonobligatory benevolence. See Morrell, 107 F.2d at 35.

In sum, Dunnavant presents no basis for the conclusion that the commission abused its "wide discretion," Place, 150 Va. at 567, 143 S.E. at 758, McGuire, 188 Va. at 449, 50 S.E.2d at 287, either by misapplying the governing legal principles or by adopting irrational conclusions

from the evidence presented. "Only when reasonable jurists could not differ can we say an abuse of discretion has occurred." <u>Tynes v. Commonwealth</u>, 49 Va. App. 17, 21, 635 S.E.2d 688, 689 (2006) (citation omitted); <u>Hernandez-Guerrero v. Commonwealth</u>, 46 Va. App. 366, 370, 617 S.E.2d 410, 412 (2005). Dunnavant has made no such showing in this case.

III.

Finding the commission did not abuse its discretion in rejecting Dunnavant's dependency claim under Code § 65.2-516, we affirm.

<u>Affirmed.</u>