COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Felton, Judges Frank and Kelsey
Argued at Richmond, Virginia

MICHAEL BERNARD

                                                                OPINION BY
v.        Record No. 2590-11-2             JUDGE D. ARTHUR KELSEY
                                                                JULY 17, 2012

CARLSON COMPANIES – TGIF AND
 INDEMNITY INSURANCE COMPANY
 OF NORTH AMERICA

            FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

                Joel W. Young (Law Offices of Wesley G. Marshall, PLC, on
                brief), for appellant.

                R. Ferrell Newman (Newman & Wright, RLLP, on brief), for
                appellees.


        The Virginia Workers' Compensation Commission denied a claim filed by Michael

Bernard, a restaurant waiter who "attempted to swallow a piece of quesadilla that was too big for

his esophagus." Appellant's Br. at 10. The commission found Bernard's injury occurred in the

course of his employment but not as a result of an actual risk of employment. Agreeing with the

commission's legal reasoning and deferring to its factfinding, we affirm.

                                                I.

        We view the evidence on appeal in the light most favorable to Bernard's employer, "the

prevailing party before the commission." Dunnavant v. Newman Tire Co., 51 Va. App. 252,

255, 656 S.E.2d 431, 433 (2008).

        In 2010, Bernard worked as a host and waiter at a TGI Friday's (TGIF) restaurant. When

new food selections came out, he and other employees often sampled the food so they could

make recommendations to customers. The commission found Bernard "was not required to taste

anything" and "did not anticipate being disciplined" if he chose not to sample the food. Bernard

v. Carlson Cos. – TGIF, 2011 Va. Wrk. Comp. LEXIS 401 (Nov. 23, 2011). In January 2010, Bernard sampled a quesadilla. Though he had never before had problems swallowing food, Bernard choked on a partially chewed bite of the quesadilla. The strenuous process of dislodging it damaged his esophagus.

Bernard filed a worker's compensation claim, contending the injury occurred in the course of his employment and arose out of an actual risk of his employment. He did not allege the quesadilla was unusual or defective in any way. Bernard has had Crohn's disease since childhood. But he did not claim, nor did the evidence prove, that some peculiar quality of the quesadilla triggered his underlying Crohn's disease.

The deputy commissioner denied the claim, finding the injury occurred in the course of the employment but did not arise out of an actual risk of the employment. Relying on precedent from the commission,[1] the deputy held no evidence suggested the quesadilla was in any way unusual or defective. On review, the majority of the commissioners agreed. Relying on its own precedent, as well as our caselaw, the commission held:

> [W]e find that the claimant's injury did not arise out of a risk of his employment. In cases of injury due to food provided by the employer, we have found compensable injuries only when there was something unusual or abnormal about the food, i.e. it was spicy, hot in temperature, or contained a hard object. Here, there was no problem documented with the quesadilla which became stuck in the claimant's throat and caused his injury. The claimant did not assert that it was something that he should not eat because of his medical condition. The claimant would have been equally exposed to any risk connected with eating an ordinary quesadilla had he eaten it apart from his employment.

---

[1] Ellis v. Am. Airlines. Inc., VWC File No. 232-07-59 (Jan. 23, 2008) (accepting claim because candy contained a "hard object" that "shattered" an employee's tooth); Pead v. Busara Rest., VWC File No. 194-76-93 (May 5, 2000) (accepting claim because food was unusually spicy); Caprio v. W. Point Sch. Bd., VWC File No. 189-45-16 (Oct. 14, 1998) (accepting claim because soup contained a hard object).

Id.  Commissioner Diamond dissented on the ground that TGIF exposed Bernard to the risk of eating "novel foods" like a quesadilla.  Id.

## II.

On appeal to us, Bernard concedes he "attempted to swallow a piece of quesadilla that was too big for his esophagus."  Appellant's Br. at 10.  The incident should be covered by the workers' compensation statute, Bernard argues, because TGIF "provided" the quesadilla and "encouraged" him to eat it.  Id.  We agree TGIF provided Bernard with the quesadilla, while he was working, and encouraged him to eat it — thus his injury occurred *in the course of* his employment.  We disagree, however, that his failure to fully chew the quesadilla and his resulting injury *arose out of* his employment.

### A.  BASIC ARISING-OUT-OF PRINCIPLES

The Workers' Compensation Act applies when the claimant "satisfies both the 'arising out of' and the 'in the course of' prongs of the statutory requirements of compensability."  Butler v. S. States Coop., Inc., 270 Va. 459, 465, 620 S.E.2d 768, 772 (2005).  "The concepts 'arising out of' and 'in the course of' employment are not synonymous and both conditions must be proved before compensation will be awarded."  Clifton v. Clifton Cable Contracting, LLC, 54 Va. App. 532, 539, 680 S.E.2d 348, 352 (2009) (quoting Grand Union Co. v. Bynum, 226 Va. 140, 143, 307 S.E.2d 456, 458 (1983)).

No matter how tempting it is to conflate the two concepts, we must be vigilant "to maintain the distinction between arising 'out of' and arising 'in the course of' employment." Cnty. of Chesterfield v. Johnson, 237 Va. 180, 186, 376 S.E.2d 73, 76 (1989).  Failing to do so transforms the analysis into an assessment of "positional risk," which asks only if the injury occurred during the course of employment.  Id. at 185, 376 S.E.2d at 75-76.  Arguments like this

- 3 -

— overlooking "the difference between the concepts of 'arising out of' and 'in the course of' the employment" — are little more than efforts to "eradicate the distinction which exists under Virginia law between these expressions" and, if successful, "would mean an acceptance of the 'positional risk' doctrine in cases of this type and amount to a rejection of the 'actual risk' test long-recognized in Virginia." Baggett & Meador Cos. v. Dillon, 219 Va. 633, 640, 248 S.E.2d 819, 823 (1978) (citation omitted).

To this end, Virginia follows the "actual risk" doctrine which "excludes 'an injury which comes from a hazard to which the employee would have been equally exposed apart from the employment.'" Taylor v. Mobil Corp., 248 Va. 101, 107, 444 S.E.2d 705, 708 (1994) (quoting Johnson, 237 Va. at 183, 376 S.E.2d at 75, and United Parcel Serv. v. Fetterman, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985)). An "'actual risk' of employment" is "not merely the risk of being injured while at work." Id. Reversing one of our opinions for "[i]n effect" applying the "doctrine of positional risk," the Virginia Supreme Court repeated that it has "consistently rejected" the doctrine. Hill City Trucking v. Christian, 238 Va. 735, 740, 385 S.E.2d 377, 380 (1989). The "actual risk" standard, the Court emphasized, necessarily excludes an injury caused by "*a hazard to which the workman would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood.*" Id. at 739, 385 S.E.2d at 379 (emphasis in original) (quoting Baggett & Meador Cos., 219 Va. at 638, 248 S.E.2d at 822).

Virginia courts have applied this understanding of the actual risk doctrine in numerous cases.[2] The first premise of the actual risk doctrine requires a "hazard" or "danger" *not* equally

---

[2] See Simms v. Ruby Tuesday, Inc., 281 Va. 114, 122-23, 704 S.E.2d 359, 363 (2011); Combs v. Va. Elec. & Power Co., 259 Va. 503, 509, 525 S.E.2d 278, 282 (2000); Richmond Newspapers v. Hazelwood, 249 Va. 369, 372, 457 S.E.2d 56, 58 (1995); Metcalf v. A. M. Express Moving Sys., 230 Va. 464, 468, 339 S.E.2d 177, 180 (1986); Cent. State Hosp. v. Wiggers, 230 Va. 157, 159, 335 S.E.2d 257, 259 (1985); Richmond v. Braxton, 230 Va. 161,

present "apart from the employment" but rather one "peculiar to the work." Id. Without this precondition, any injury — of any kind no matter the cause — would be covered by the Workers' Compensation Act. This would be unfair to employers (by greatly expanding their no-fault liability for worker injuries) and equally unfair to employees (by greatly expanding the employer's immunity to fault-based tort recoveries). Policing the line between coverage and noncoverage is critical to the "societal exchange" that underlies the "*quid pro quo*" of the statute. Roller v. Basic Constr. Co., 238 Va. 321, 327, 382 S.E.2d 323, 325 (1989).

Perhaps the most common examples of the arising-out-of principle are the cases involving tripping on steps. An employee who trips while walking up a staircase at work cannot recover compensation unless something about the steps (or some other condition of the workplace) presented a hazard or danger peculiar to the worksite. Even though the employer provided the steps, and encouraged the employee to use them, if there is "nothing unusual about or wrong with the steps," an employee who trips over them cannot show the accident "arose out of" the employment. Johnson, 237 Va. at 185-86, 376 S.E.2d at 76.

On the other hand, if the steps are "unusual" because they are "slightly higher than normal" or otherwise peculiar, then tripping over them would involve an accident arising out of the employment. Id. (pointing out these "facts were crucial" to cases like Reserve Life Ins. Co.

---

164, 335 S.E.2d 259, 261 (1985); R & T Invs. v. Johns, 228 Va. 249, 253, 321 S.E.2d 287, 289 (1984); Richmond Mem'l Hosp. v. Crane, 222 Va. 283, 285, 278 S.E.2d 877, 879 (1981); Baggett & Meador Cos., 219 Va. at 638, 248 S.E.2d at 822; Conner v. Bragg, 203 Va. 204, 209, 123 S.E.2d 393, 397 (1962); Norfolk & Washington S.B. Co. v. Holladay, 174 Va. 152, 157-58, 5 S.E.2d 486, 488 (1939); Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938); Liberty Mut. Ins. Corp. v. Herndon, 59 Va. App. 544, 556-57, 721 S.E.2d 32, 38 (2012); Southside Va. Training Ctr. v. Ellis, 33 Va. App. 824, 829, 537 S.E.2d 35, 37 (2000); Vint v. Alleghany Reg'l Hosp., 32 Va. App. 60, 64, 526 S.E.2d 295, 297 (2000); Carlson v. Dep't of Military Affairs, 26 Va. App. 600, 606, 496 S.E.2d 107, 110 (1998); Bassett-Walker, Inc. v. Wyatt, 26 Va. App. 87, 93, 493 S.E.2d 384, 387 (1997); Grove v. Allied Signal, Inc., 15 Va. App. 17, 19-20, 421 S.E.2d 32, 34 (1992); Winegar v. Int'l Tel. & Tel., 1 Va. App. 260, 261-62, 337 S.E.2d 760, 760-61 (1985).

v. Hosey, 208 Va. 568, 159 S.E.2d 633 (1968)).  In such cases, the steps present an *enhanced*

risk,[3] qualitatively different from the steps most people walk up and down on and off the job.

It does not matter that the employee must walk up and down the steps as a mandatory

part of his employment.  That obligatory fact — like the fact that Bernard ate the quesadilla to be

a better waiter — only establishes the injury occurred during the course of employment.  "The

fact that the injury occurred at work adds nothing and answers nothing, when the inquiry is, did

the injury arise out of the employment.  It simply helps prove the 'in the course of' prong of the

compensability test."  Johnson, 237 Va. at 185, 376 S.E.2d at 76.

### B.  THE INAPPLICABLE STREET-RISK EXCEPTION

Virginia courts have carved out of these general principles one notable exception.  Under

the "street-risk rule," Marketing Profiles, Inc. v. Hill, 17 Va. App. 431, 435, 437 S.E.2d 727, 730

(1993) (*en banc*), the generally applicable principles — excluding coverage for unpeculiar risks,

common to everyone — do not necessarily apply to vehicle accidents caused by ordinary street

risks.  "An *exception to the rule* that the risk of employment must be a risk to which the common

neighborhood is not exposed is the 'Street Risk Doctrine.'  This principle recognizes

compensable injuries that occur in vehicular collisions while an employee is on his or her

---

[3] A workplace condition that "increase[s] the risk of injury" implicates the actual risk test.  Hill City Trucking, 238 Va. at 739-40, 385 S.E.2d at 379-80; see also Simms, 281 Va. at 119-23, 704 S.E.2d at 361-63 (recognizing that the danger be "peculiar to the work and not common to the neighborhood" affirmed award based on then-Judge Cardozo's observation that "young men and boys" create an enhanced risk of horseplay, a condition "inseparable from factory life" (citation omitted)); R & T Invs., 228 Va. at 253, 321 S.E.2d at 289 (noting the "probability" of harm may be "augmented" by the "peculiar" risks of the job (citation omitted)); Lucas v. Fed. Express Corp., 41 Va. App. 130, 135, 583 S.E.2d 56, 59 (2003) (focusing on the "special or peculiar" risks of the workplace); Roberson v. Whetsell, 21 Va. App. 268, 271 n.1, 463 S.E.2d 681, 683 n.1 (1995) (noting the employee's risk "was heightened" by the conditions of his employment); Southland Corp. v. Parson, 1 Va. App. 281, 287, 338 S.E.2d 162, 165 (1985) (finding "elevated height constituted an 'added risk' of the employment").

master's business." Lawrence J. Pascal, <u>Workers' Compensation Practice in Virginia</u> ¶ 2.401, at 58 (8th ed. 2011) (emphasis added).

The cases applying the street-risk doctrine represent a departure from traditional principles. Statements in our opinions suggesting "the fact that the general public may be exposed to the same risk is not dispositive," *post*, at 12, originated in the street-risk cases. <u>See</u> <u>Lucas v. Lucas</u>, 212 Va. 561, 186 S.E.2d 63 (1972); <u>Immer & Co. v. Brosnahan</u>, 207 Va. 720, 152 S.E.2d 254 (1967); <u>Dreyfus v. Meade</u>, 142 Va. 567, 129 S.E. 336 (1925).[4] Extending the reasoning of those cases outside their unique context implicates policy judgments best left for legislative, not judicial, innovation. We thus decline the opportunity to extend the street-risk exception to cases where, as here, the employee sustains injury eating at work.

C. THE COMMON AND UNPECULIAR QUESADILLA

Bernard's quesadilla was neither a hazard nor a danger — it was simply a quesadilla. No evidence suggested it had unusual properties or was made with defective ingredients. It could not be distinguished (for purposes of presenting a choking risk) from any other quesadilla or, for that matter, any food that requires chewing before swallowing.

Even if we could call a flawless quesadilla a "hazard" or a "danger," <u>Hill City Trucking</u>, 238 Va. at 739, 385 S.E.2d at 379, we could hardly conclude it was one "peculiar" to TGIF and "not common to the neighborhood" of quesadilla eaters, <u>id.</u> Nor could we say the risk of Bernard choking on under-chewed food was something other than "*a hazard to which the*

---

[4] In the few aberrational cases not involving street risks where such statements are made, they are usually caveated by the requirement that there be a "peculiar or abnormal degree" of risk. <u>Honaker & Feeney v. Hartley</u>, 140 Va. 1, 8-11, 124 S.E. 220, 222 (1924) (citing <u>Cudahy Packing Co. v. Parramore</u>, 263 U.S. 418, 424 (1923) ("The fact that the accident happens upon a public road or at a railroad crossing and that the danger is one to which the general public is likewise exposed is not conclusive against the existence of such causal relationship, if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree.")).

*workman would have been equally exposed apart from the employment.*" Id. (emphasis in original) (quoting Baggett & Meador Cos., 219 Va. at 638, 248 S.E.2d at 822). Only a court applying the positional risk doctrine could hold otherwise.[5]

In sum, the commission correctly concluded Bernard's choking injury occurred in the course of his employment. TGIF provided the quesadilla, and Bernard tried to eat it to be a better waiter. Even so, the commission was also right to conclude the injury did not arise out of an actual risk of the employment. The quesadilla was not a hazard or danger, much less one peculiar to TGIF. Swallowing partially chewed food was a risk Bernard faced equally on and off the job. Nothing about the TGIF quesadilla or Bernard's work environment increased that risk.[6] Bernard's argument to the contrary confuses the separate concepts of in-the-course-of and arising-out-of, and in the process, invites us to apply *de facto* the positional risk doctrine. To do

---

[5] See, e.g., Williams v. Indus. Comm'n, 232 N.E.2d 744, 745 (Ill. 1967) (choking on food did not arise out of the employment); Rodin v. Indus. Comm'n, 738 N.E.2d 955, 960 (Ill. App. Ct. 2000) ("[T]hat the claimant would not have consumed the food . . . had he not been ordered to attend" does not mean his choking injury "arose out of his employment, as Illinois has never adopted the positional risk doctrine."); Smith v. Bob Evans Farms, Inc., 754 N.E.2d 18, 27 (Ind. Ct. App. 2001) (holding the "fact that [decedent] was in the course of his employment when the [choking] injury occurred is not sufficient" because his choking to death "did not arise out of his employment"); Ind. Mich. Power Co. v. Roush, 706 N.E.2d 1110, 1115 (Ind. Ct. App. 1999) (holding nothing about the employment "increased" claimant's "risk of choking"); Klein v. Terra Chem. Int'l, Inc., 286 A.2d 568, 572 (Md. Ct. Spec. App. 1972) (rejecting "positional risk" test and finding claimant was not "exposed to any peculiar, special, or increased risk of choking on his food, different from that encountered by the general public"), overruled by Mulready v. Univ. Research Corp., 756 A.2d 575, 583 (Md. 2000) (adopting "substantially the positional-risk test"); Bartlett v. Duke Univ., 200 S.E.2d 193, 195 (N.C. 1973) (holding choking on food "was the same risk to which [claimant] would have been exposed had he been eating at home"); Forsythe v. INCO, 384 S.E.2d 30, 32 (N.C. Ct. App. 1989) (holding employment "created no greater risk of injury or death by choking than the risk one must take every time food is ingested").

[6] See Travelers Ins. Co. v. Majersky, 531 S.W.2d 765, 768-69 (Mo. Ct. App. 1975) (affirming award because "it was the stress and tension of [claimant's] particular assignment that night and the haste in which he felt he was required to consume his meal which caused the employee to lapse into the careless method of eating which caused him to choke to death" and this involved a "different and greater risk" than he would ordinarily encounter apart from work).

so would undermine "the distinction between arising 'out of' and arising 'in the course of' employment." <u>Johnson</u>, 237 Va. at 186, 376 S.E.2d at 76.

III.

Because the commission correctly applied the actual risk test to the facts of this case, we affirm its denial of Bernard's compensation claim.

<u>Affirmed.</u>

Frank, J., dissenting.

I respectfully dissent and would reverse the decision of the commission and remand for further proceedings.

The facts are undisputed. Claimant worked for employee as a host/server. Part of his work responsibilities was to make food recommendations to the guests. To that end, employer periodically conducted food tasting demonstration programs to introduce staff to new menu items. Staff would then be able to describe the taste to customers and to recommend the new menu items. Claimant indicated these recommendations actually assist guests in selecting their food.

Prior to the food demonstration, staff would be briefed on the ingredients, food preparation, and what items accompany the selection. Staff would then taste whatever foods they chose to eat. These tastings were at no cost to the employees and occurred while employees were "on the clock."

Browning Bridges, claimant's supervisor, testified the food tasting activity was to familiarize staff with the taste of new foods so they could explain those tastes to guests. Part of a host/server's employment responsibilities is to "sell the food." While attendance at the food tasting activities is mandatory, no employee is required to eat anything they do not want to eat.[7] However, all host/servers are evaluated on the effectiveness of their recommendations to guests, and failure to make such recommendations can result in counseling by management.[8] Employer

---

[7] Claimant had Crohn's disease and was not able to eat certain foods. However, claimant's illness was not a causative factor in claimant's injury. Employer stipulated choking on the quesadilla was the cause of claimant's injury, and the medical treatment the claimant received was causally related to the choking.

[8] While this program was initiated after claimant's injury, claimant testified the standards of evaluation fairly represented expectations at the time of the injury. Browning Bridges, claimant's supervisor, confirmed there was a "quality check" in place at the time of claimant's injury which included an employee's performance in recommending foods to guests.

even employs "secret shoppers" to assess staff members' performance, including recommendations of menu items.

On January 4, 2010, during a food tasting demonstration, claimant tasted rice and then a quesadilla. The quesadilla lodged in his throat and perforated his esophagus. Claimant was taken to an emergency room and was diagnosed with esophageal perforation and collapsed lung. He underwent emergency surgery.

The deputy commissioner found claimant's injuries did not arise out of his employment. The full commission affirmed, summarizing the deputy as follows:

> The Deputy Commissioner analogized these cases to the cases of employees traversing stairs and found that all of the foods in the cited cases were unusual or defective. Finding that there was no evidence of a defect in the quesadilla, he found that the act of eating an employee meal, with no other factors involved, is not a risk of the employment, and he denied the claim.

The commission concluded:

> On [r]eview, we find that the claimant's injury did not arise out of a risk of his employment. In cases of injury due to food provided by the employer, we have found compensable injuries only when there was something unusual or abnormal about the food, i.e. it was spicy, hot in temperature, or contained a hard object. Here, there was no problem documented with the quesadilla which became stuck in the claimant's throat and caused his injury. The claimant did not assert that it was something that he should not eat because of his medical condition. The claimant would have been equally exposed to any risk connected with eating an ordinary quesadilla had he eaten it apart from his employment.

The question before this Court is whether an injury caused by claimant choking on food supplied by employer during a food tasting demonstration arises out of the course of his employment. When we are presented with "essentially undisputed facts," as we are here, a *de novo* standard of appellate review governs the question whether the injury satisfies the "actual risk" test. Hilton v. Martin, 275 Va. 176, 180, 654 S.E.2d 572, 574 (2008) (characterizing the "arising out of" issue as a "question of law" when the parties present undisputed facts).

- 11 -

Under the Workers' Compensation Act, an employee must prove by a preponderance of the evidence that his injury arose "out of and in the course of [his] employment" to qualify for compensation benefits. Code § 65.2-101; see also Marketing Profiles v. Hill, 17 Va. App. 431, 433, 437 S.E.2d 727, 729 (1993) (*en banc*).

The phrase "arising out of and in the course of the employment" covers those accidents which cause injury to an employee while he is discharging some duty he is authorized to perform in furtherance of his employer's business, either directly or indirectly. Cohen v. Cohen's Dep't Store, 171 Va. 106, 110, 198 S.E. 476, 477 (1938).

Virginia employs the "actual risk" test to determine whether an injury "arises out of" the employment. Green Hand Nursery, Inc. v. Loveless, 55 Va. App. 134, 141, 684 S.E.2d 818, 822 (2009). The Supreme Court of Virginia has held that an injury is not compensable if it:

> "cannot fairly be traced to the employment as a contributing proximate cause and which comes from a hazard to which the workmen would have been equally exposed apart from the employment. The causative danger must be peculiar to the work and not common to the neighborhood. It must be incidental to the character of the business and not independent of the relation of master and servant. It need not have been foreseen or expected, but after the event it must appear to have had its origin in a risk connected with the employment, and to have flowed from that source as a rational consequence."

Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938) (quoting In re McNicol, 102 N.E. 697, 697 (Mass. 1913)).

The commission found that claimant, by eating the quesadilla, would have been equally exposed to such injury apart from his employment. Employer argues on appeal that claimant faced a risk no different than a risk to which the general public is equally exposed.

However, in Green Hand Nursery we held "the fact that the general public may be exposed to the same risk is not dispositive in the analysis of whether the injury arose out of the employment." 55 Va. App. at 144, 684 S.E.2d at 823.

In Green Hand Nursery, claimant was struck by a vehicle while manually shutting off a series of water sprinklers located twenty-seven feet from a highway. The sprinklers were located in a display section of the nursery which was open to the nursery's customers who could walk among the plants. Claimant testified that her task of turning off the sprinklers "occupied" her attention. Id. at 139, 684 S.E.2d at 820. When she heard car tires screech, she tried to move out of the car's path, but potted plants prevented her from retreating in a straight course toward the trees. She had to jump a ditch, taking a less direct route. Id. at 139, 684 S.E.2d at 821.

This Court concluded in that case that claimant's performance of her job increased the risk of injury by diverting her attention from the danger of the approaching vehicle. Id. at 143, 684 S.E.2d at 823. We explained if the injury can "'fairly be traced to the employment as a contributing proximate cause,'" it matters not that the danger is common to the neighborhood. Id. at 145, 684 S.E.2d at 823 (quoting R & T Invs. v. Johns, 228 Va. 249, 253, 321 S.E.2d 287, 290 (1984)).

Thus, our inquiry here is limited to whether there is a causal connection between the choking injury and claimant's work responsibilities. Is the injury fairly traceable to employment as a contributing proximate cause? I conclude that it is and agree with the dissenting commissioner.

Here the commission concluded that claimant's injury was not compensable because there was "no problem documented with the quesadilla" and that the claimant would have been equally exposed to any risk associated with eating an ordinary quesadilla apart from his employment. The commission explained that in "cases of injury due to food provided by the employer, we have found compensable injuries only when there was something unusual or abnormal about the food . . . ." However, the cases cited by the deputy and relied upon by the commission do not support such a conclusion.

- 13 -

In Pead v. Busara Restaurant, 00 WC UNP 1947693 (2000), cited in the commission's opinion, claimant ate a spicy meal prepared by employer for the employees, became ill, and was treated for gastroenteritis. The employer prepared three meals daily for the employees, separate from meals prepared for customers. In finding claimant's injury arose in the course of employment, the commission's analysis was not based on the nature of the food, but on the fact that employer provided the meals for employees before, during, and after their shift, and were provided free of charge "which is a characteristic of the employment."

Ellis v. American Airlines, Inc., 08 WC UNP 2320759 (2008), cited in the commission's opinion, involved claimant, a flight attendant, who was a passenger on employer's plane traveling to employer-sponsored training. During the flight, claimant purchased an on-board candy snack. As claimant bit down, a hard object broke one of his teeth. In finding the injury arose out of employment, the commission again did not analyze the nature of the object in the snack, but on the fact that employer controlled what snacks were offered for purchase. The claimant was limited to the on-board food/snacks offered by employer. "[Claimant] could not go anywhere else to obtain food or snacks."

The commission's opinion also cites Caprio v. West Point School Board, 98 WC UNP 1894516 (1998), to support its finding. Again, this case fails to do so. Claimant, a school teacher, broke a tooth while eating soup purchased from the school cafeteria. Claimant was required by the school to remain on the school premises during lunch. The commission, in its analysis, did not discuss the nature of the food that caused the injury, but only the circumstances in which claimant ate the food. The commission concluded claimant consumed food provided by employer and she was required to remain on the school premises. Under those facts, the commission concluded claimant's employment was a proximate cause of her injury.

In each of the above cited cases, the commission analyzed not whether the food was unusual or defective, but whether eating the food was characteristic of claimant's employment.

As the Supreme Court of Virginia opined in Lucas v. Lucas, 212 Va. 561, 186 S.E.2d 63 (1972):

> "If the voluntary act of an employee which causes an injury is sufficiently related to what the employee is required to do in fulfilling his contract of service, or is one in which someone in a like capacity may or must do in the interest of his employer's business, the fact that the employee was not actually required to perform the act will not impair his right to recover compensation."

Id. at 564, 186 S.E.2d at 64 (quoting 7 Sneider, Workmen's Compensation § 1662(a), at 264 (1945)).

Walking up or down stairs, or any walking, sitting, standing, bending, eating food or drinking are ordinary occurrences of every job and are not risks unique to a particular job. In cases involving stairs, "[i]t is well established that a fall does not arise out of the employment without evidence of a defect in the stairs *or* evidence that a condition of the employment caused the fall." Grayson Sch. Bd. v. Cornett, 39 Va. App. 279, 287, 572 S.E.2d 505, 509 (2002) (emphasis added). In those cases, the steps need not be unusual or defective for a fall to be compensable. While an unusual or defective set of steps is a basis for compensation, those factors are not exclusive. The defect or unusual condition of the steps is only relevant to determine whether the causative danger is peculiar to the work and incidental to the character of the business. United Parcel Service v. Fetterman, 230 Va. 257, 258, 336 S.E.2d 892, 893 (1985).

Clearly, the step cases do not exclude other conditions unique to that particular employment. For example, in Marion Correctional Center v. Henderson, 20 Va. App. 477, 458 S.E.2d 301 (1995), a prison guard fell down steps in a prison because his attention was focused on several inmates, not because of any defect or unusual condition of the step.

We held:

> Observation of the guard towers was one of the security functions of his employment. The way in which he performed this aspect of his job increased his risk of falling on this occasion and directly contributed to cause his fall and injury. Cf. Fetterman, 230 Va. at 259, 336 S.E.2d at 893. He would not have been equally exposed to the risk apart from his duty to observe the guard towers and provide security at the facility. Cf. Bradshaw v. Aronovitch, 170 Va. 329, 335, 196 S.E. 684, 686 (1938). Henderson's injury occurred because of the performance of his job duties in a particular manner. Therefore, the cause of the injury was not "unrelated to any hazard common to the workplace." Fetterman, 230 Va. at 259, 336 S.E.2d at 893.

Henderson, 20 Va. App. at 481, 458 S.E.2d at 303.

In the defective or unusual step cases, or in Henderson, the risks were unique to that particular job, not activities common to all jobs.

The mere act of traversing a set of stairs, or climbing a ramp does not, by itself, involve a work-related risk justifying compensation. Nurses 4 You, Inc. v. Ferris, 49 Va. App. 332, 341, 641 S.E.2d 129, 133 (2007). "Simple acts of walking, bending, or turning, without any other contributing environmental factors, are not risks of employment." Southside Virginia Training Ctr. v. Ellis, 33 Va. App. 824, 829, 537 S.E.2d 35, 37 (2000). Accordingly, an injury does not arise out of the employment "merely because it occurred during the performance of some employment duty if the act performed by the employee is not a causative hazard of the employment." Ferris, 49 Va. App. at 341, 641 S.E.2d at 133. By way of example, if a claimant's job is to test the spacing of steps by walking up and down stairs, and suffers an injury while doing so, we need not evaluate if the steps were defective or unusual because testing stairs is not a normal occurrence of all jobs, but is a causative hazard of that particular employment.

Applying these principles to the facts presented here, I disagree with employer that claimant's consumption of the quesadilla was simply a "common, human experience" and therefore not arising out of his employment. I conclude that sampling the quesadilla was a

- 16 -

causative hazard of claimant's employment because claimant was "discharging some duty he [was] authorized or directed to perform" in furtherance of his employer's business. Cohen, 171 Va. at 110, 198 S.E. at 477. Therefore, I need not discuss whether there was a defect in the food he was consuming.

Here, claimant as a host/server, was evaluated partially on the manner in which he recommended food to customers. The food tasting demonstration allowed employees to sample new menu items so they could make these recommendations to customers. Part of the host/server's job function is to "sell the food." Claimant's tasting the quesadilla was to further employer's goal to "sell the food." The briefing and the tasting enabled claimant to explain to the customers the new menu items. Claimant's food sampling fulfilled "his contract of service," was done in furthering employer's business, and was incidental to claimant's work as a host/server. Clearly, claimant's exposure to the quesadilla was occasioned by the nature of his employment, thus satisfying the "actual risk" test. Green Hand Nursery, 55 Va. App. at 141, 684 S.E.2d at 822. As stated above, it is irrelevant that others outside the workplace might have been exposed to the same injury.

For the foregoing reasons, I respectfully dissent and would reverse the decision of the commission denying claimant benefits and remand for entry of an award.